## TEXAS BUILDING & MORTGAGE CO. v. MORRIS et al.

### No. 3318.

Court of Civil Appeals of Texas. Beaumont.
Dec. 14, 1938.

Rehearing Denied Dec. 29, 1938.

366

Stewart & DeLange, of Houston, for appellant.

Wilmot F. Warner and Jas. G. Donovan, both of Houston, for appellees.

WALKER, Chief Justice.

As tried in the lower court, this was an action in trespass to try title by appellant, Texas Building & Mortgage Company, against appellee Guaranty Bond State Bank of Tomball, Texas, hereinafter referred to as the Bank, and appellees Judge A. W. Morris and his wife, Mrs. May B. Morris, to recover the title and possession of the West 40 feet of Lots Nos. 7, 8, 9, and 10 in Block No. 12 in Ayres Addition to the City of Conroe, in Montgomery County. Appellees answered by pleas of not guilty, etc. On trial to the court without a jury, judgment was rendered in favor of the Bank against appellant and Judge and Mrs. Morris for the title and possession of the property in controversy.

Judge and Mrs. Morris were the common source of title. Lots Nos. 7, 8, 9, and 10 of Block No. 12 of the Ayres Addition constituted the homestead of Judge and Mrs. Morris subsequent to 1903. On the 23d day of November, 1933, they executed to A. R. Allen a mechanic's, materialman's and contractor's lien against the property in controversy to secure him in the costs of certain improvements erected on the property in controversy—an apartment house—in the sum of $6,000; though executed on the 23d day of November, 1933, the lien was dated as of January 16, 1933. Appellant purchased this note and lien from Allen with knowledge of all the facts attending their execution. Judge and Mrs. Morris defaulted in their payments on the note and lien. Appellant instituted suit in the district court of Montgomery County against them praying for judgment on its debt and for foreclosure of its lien, and by judgment dated the 30th day of September, 1936, was granted the relief prayed for. Under Order of Sale issued on its judgment, on the 5th day of January, 1937, appellant purchased the property in controversy, and on that date the sheriff of Montgomery County executed to appellant his official deed, conveying to it the property in controversy. This was the title offered by appellant in evidence on the trial.

On the 25th day of November, 1930, in the district court of Harris County, the Bank recovered judgment against Judge Morris and J. H. Ramsey for the sum of $11,619.30, with interest from date at the rate of 6% per annum, together with foreclosure of lien upon certain property in Harris County, given to secure payment of the judgment debt. On the 3d day of February, 1931, at its foreclosure sale, the Bank purchased the property as described in the judgment of foreclosure, and the sheriff of Harris County executed to it his official deed, conveying to it the property. Though this deed was dated the 3d day of February, 1931, it was in fact not delivered until the 12th day of February, 1931. On that date the Bank paid to the sheriff the cost of sale in the sum of $38.35. The sheriff's return on the sale was dated the 12th day of February, 1931. On the 4th day of December, 1930, the clerk of the district court of Harris County executed and delivered to the Bank an abstract of its judgment against Judge

Morris and Mr. Ramsey; this abstract was filed in Montgomery County at 4 o'clock P. M. on February 3, 1931, and was recorded and indexed at 4:30 P. M. of that date. As filed and recorded in Montgomery County, the abstract did not show a credit of the Bank's bid on the Harris County property in the sum of $1,000. We quote as follows from the abstract:

| "Amount of Judgment | Amount of Costs | Rate of Interest | Amount of Credits | Amount Due |
|---|---|---|---|---|
| 11,619.30 | 13.55 | 6% | None | Full Amt." |

As recorded in Montgomery County, the abstract did not indicate that it was under the seal of the clerk of the district court of Harris County, but the clerk's certificate contained the following recitation:

"Witness my hand and seal of said Court, at office at Houston, Texas, the 4th day of December A. D. 1930.

"O. M. Duclos, Clerk District Court, Harris County, Texas."

The Bank had alias execution issued on its judgment in Harris County against Judge Morris and Mr. Ramsey, directed to the sheriff of Montgomery County; under the direction of the Bank the sheriff lévied that execution upon the property in controversy, and on the 7th day of July, 1936, in the manner prescribed by law, sold the property at execution sale to the Bank, and executed and delivered to the Bank his official deed, conveying to it the property. This was the title offered by the Bank on the trial of this cause, and which the lower court adjudged to be superior to appellant's title.

Appellant makes the following points against the judgment of the lower court:

■■■ It is insisted that the abstract of the Bank's judgment against Judge Morris and Mr. Ramsey, as recorded in Montgomery County, "was void and fatally defective because it failed to show the credit to which it was entitled by reason of the Harris County sale." It is the law that, to create a lien against the lands of the defendant in the judgment by filing and recording an abstract of the judgment, the amount due on the judgment on the date the abstract is filed and recorded must be correctly shown, that is, in the language of Art. No. 5447, R.C.S., the abstract must show "the amount for which the judgment was rendered and balance due thereon." This statutory requirement is construed strictly by our courts. Evans v. Frisbie, 84 Tex. 341, 19 S.W. 510; Ainsworth v. Dorsey, Tex.Civ.App., 191 S.W. 594; Willis v. Sanger, 15 Tex.Civ.App. 655, 40 S. W. 229; Lemons v. Epley Hardware Company, Tex.Civ.App., 197 S.W. 1118; Noble v. Barner, 22 Tex.Civ.App. 357, 55 S.W. 382; Askey v. Power, Tex.Com.App., 36 S.W.2d 446; McGlothlin v. Coody, Tex. Com.App., 59 S.W.2d 819. If, within the meaning of Art. No. 5447, the Bank's bid of $1,000 for the Harris County property was a credit on its judgment as of date the 3d day of February, 1931, then the abstract did not show "the balance due" on the judgment, and its recordation was insufficient to create a lien against Judge Morris' land in Montgomery County. But, under the authorities, as we construe them, the sale of the Harris County land to the Bank had not been fully consummated at the time the abstract was filed and recorded in Montgomery County for the reason that the Bank had not paid the costs; and, therefore, the judgment was not entitled to the credit of the $1,000 bid by the Bank for the Harris County land, as of that date. A judicial sale is not complete, and the purchaser cannot demand a deed, until he has complied with his bid. In Tanner v. Grisham, Tex.Com.App., 295 S.W. 590, the Commission of Appeals, writing for our Supreme Court, said [page 591]: "A sale of property under execution is not effected until the successful bidder has complied with his bid." In Buckholts v. Alsup, Tex.Civ.App., 56 S.W.2d 301, it was held that a judicial sale "is no 'sale' until the date the bidder at such sale has paid in cash the amount of his bid" [page 305]; in the case at bar, the amount of the costs. The Bank bid in the property for $1,000; under the law it did not have to pay, in cash, the entire amount of $1,000 to the sheriff, or to anyone else, as it was the plaintiff in the judgment. However, the Bank was bound to pay to the sheriff, in cash, the amount of the costs in the sum of $38.35, and until that sum was paid, the Bank, the successful bidder, had not "complied with its bid." The sheriff was not required to extend to the Bank credit for the costs, $38.35; and the record shows that he did not purport to extend it credit, but withheld his return until the costs had

been paid. If the costs had not been paid by the Bank, then the sale on the 3d day of February would have been a nullity, insofar as it effected the title to the Harris County land, and the amount of the Bank's bid would not have been a credit on its judgment against Judge Morris and Mr. Ramsey.

Appellant concedes the point that there is no judicial sale until the successful bidder pays, in cash, the amount of his bid. But it insists that this proposition is not in point where the successful bidder is the plaintiff in the judgment. The point made is that the law steps in and makes him comply with his bid by entering, as a matter of law, the amount of his bid as a credit on the judgment. The authorities do not support this proposition; the bid does not become a credit on the judgment until the plaintiff bidder complies with his bid by paying the costs. In Warman v. Wurzbach, 51 S.W.2d 751, the San Antonio Court of Civil Appeals said [page 752]: "The statute [Rev.Civ.St., Art. 3822] plainly gives the right of resale in case of failure or refusal to pay a bid made on land at an execution sale, and nothing in the statute indicates that the provision as to a resale does not extend to or include a bid made by the judgment creditor. No exceptions are made and no valid reason can be assigned for excepting the creditor and preventing a resale in his delinquency in payment."

Under that holding the rights of the plaintiff in the judgment, on his successful bid, are measured by the same principles of law that measure the rights of a stranger to the judgment. In Needham v. Cooney, Tex.Civ.App., 173 S.W. 979, the court said [page 982]: "So it may be said to be the well-settled rule that, where the judgment creditor becomes the purchaser at an execution sale, the officer should, at his direction, credit the amount of his bid upon the execution, if the costs are paid in cash."

In Reese v. Dobbins, 51 Iowa, 282, 1 N. W. 540, it was held that the judgment creditor must pay the costs before he is entitled to the property and before the balance of his bid can be credited on the judgment; quoting from the court's opinion [page 541],

"Sec. 3089 of the Code provides: 'Where the purchaser at sheriff's sale fails to pay the money when demanded, the plaintiff or his attorney may elect to proceed against

him for the amount; otherwise the sheriff shall treat the sale as a nullity, and may sell the property on the same day, or after a postponement as above authorized.'

"It is urged by counsel for appellant that this statute can have no application where the plaintiff in execution is the purchaser, because he is not required to pay the amount of his bid, but the same is to be credited on his judgment.

"It is true he may not be required to pay that part of the purchase money which should be credited on the judgment, but he must pay the costs. It appears from the record in this case that when the execution was issued the costs amounted to $109.75. To this must be added the costs upon the execution, which is no inconsiderable amount. Now we have no doubt that under this statute, if the plaintiff in execution bids off property and refuses to pay the costs, the sheriff may treat the sale as a nullity, and postpone the sale to another day."

A controlling point on this proposition is that, in fact, the sheriff cannot return a credit on the judgment nor can the plaintiff purchaser enter a credit on his judgment until the costs have been taxed by the sheriff and paid by the purchaser—in the case at bar the Bank could not enter a credit on its abstract until it had paid the costs. Again, this proposition fails to take into consideration the ability of the bidder to pay the costs—the successful bidder might not be able, financially, to pay the costs.

There is no merit in the contention that evidence was not admissible to show the date the costs were in fact paid—the 12th day of February, 1931. The point made is that this testimony constitutes a collateral attack on the sheriff's deed which bore date the 3d day of February, 1931. The sheriff's return was dated the 12th day of February, 1931. The point is not one of collateral attack, but merely an explanation of the date of the delivery of the deed.

We overrule appellant's contention that the sheriff is not required to collect the costs from the plaintiff in execution. The sheriff's duty in this respect is statutory; quoting from Art. No. 3783,

"1. The several items of the bill of costs to be collected under the execution shall be endorsed thereon in intelligible words and figures. * * *

"6. It shall require the officer to satisfy the costs adjudged against the party, and the further costs of executing the writ, out of any property liable to execution of the party against whom the judgment was rendered."

We also overrule appellant's contention that, before a lien can be established against other property of the defendant by abstracting a judgment foreclosing a lien on the property described in the judgment, the property subject to the lien first must be sold, and a deficiency judgment created by crediting the sale price of the property on the judgment. Abstracting the judgment creates the lien, whether the property described in the foreclosure has been sold or not. Gordon-Sewall & Co. v. Walker, Tex. Civ.App., 258 S.W. 233. Appellant cites in support of its proposition Bailey v. Block, 104 Tex. 101, 134 S.W. 323. That case is not in point; there, it was simply held that the property subject to the foreclosure must be sold before the plaintiff in the judgment can resort to other property of the defendant.

Again, appellant contends that the abstract of the Bank's judgment against Judge Morris and Ramsey in Montgomery County "was fatally defective and void, in that the same did not contain the seal of the district court of Harris County." The only evidence on this point was the record of the abstract of the judgment in Montgomery County, and this record, as stated above, did not indicate that the original of the abstract was under seal. However, the clerk of the district court of Harris County certified that it was under his seal. As there was no evidence impeaching the clerk's certificate, it must be presumed that he performed his official duty by duly attaching his official seal. Ballard v. Perry's Adm'r, 28 Tex. 347; Coffey v. Hendricks, 66 Tex. 676, 2 S.W. 47; Witt v. Harlan, 66 Tex. 660, 2 S.W. 41; Bookhout v. McGeorge, Tex.Civ.App., 65 S.W.2d 512, 519. That the original of the abstract was not in evidence distinguishes this case from Traweek v. Simmons, Tex.Civ.App., 72 S.W. 2d 349, cited by appellant; in that case the original of the abstract was in evidence. But there is no legal requirement that the certificate to the abstract be recorded; Spence v. Brown, 86 Tex. 430, 25 S.W. 413; so, the failure of the record to show the seal is immaterial.

In indicating the amount of the judgment, as shown by the statement above, the abstract gave figures but did not use the dollar mark as a part of the statement of the amount; on this point appellant makes the following proposition: "This abstract of judgment under which the Appellee Bank claimed title to the land in controversy is also defective for the reason that the dollar mark was omitted before the amount of the judgment and the amount of the costs."

The omission of the dollar mark did not make the abstract void. The figures used in connection with the explanatory words sufficiently indicated the amount of the judgment without the addition of the dollar mark. New England Loan & Trust Co. v. Avery et al., Tex.Civ.App., 41 S.W. 673; O'Docharty v. State, Tex.Cr.App., 57 S.W. 657; Fink v. Gulf, C. & S. F. R. Co., 4 Tex.Civ.App. 269, 23 S.W. 330; Bluestein v. Collins, Tex.Civ.App., 103 S.W. 687; Gutzwiller v. Crowe, 32 Minn. 70, 19 N.W. 344. Quoting from the Avery Case, supra, "The statute does not prescribe any particular form for a judgment abstract, but merely states that it shall show certain facts, among which are the amount for which the judgment was rendered and the amount still due upon the same. In the very nature of things, the statute applies only to such judgments as are for a given sum of money and it is to secure such sum that the lien is created. * * * Divided, as the figures in these abstracts are, by perpendicular lines, we think it is quite obvious that the figures in the left-hand column under each heading indicate that number of dollars, and those in the right hand column the number of cents." [page 674.]

Appellant cites Bush v. Farris, 5 Cir., 71 F. 770; this case is not controlling.

The abstract as recorded in Montgomery County shows the date of the judgment and the interest rate. There was no statement in the abstract that interest was to be calculated from the date of the judgment nor on the amount of the judgment. These omissions in the abstract did not render its recordation "void and fatally defective," as appellant insists. The abstract contained every statutory essential. The law fixes the date from which interest runs; Art. No. 5072, R.C.S. provides, "All judgments of the courts of this State shall bear interest at the rate of six per cent per annum from and after the date of the judgment, except where the contract upon which the judgment is founded bears a specified interest greater than six per cent per annum and not exceeding ten per cent

per annum, in which case the judgment shall bear the same rate of interest specified in such contract and after the date of such judgment."

By its ninth proposition appellant insists that the abstract of the judgment as recorded in Montgomery County "was fatally defective and void for the reason that same was not properly indexed, in that the correct name of the plaintiff in the judgment was not shown, nor was same correctly indexed under the name of each plaintiff and defendant in judgment." In the direct index of the abstract of the judgment the Bank's name was entered "Guaranty Bond State Bank of Tomball." The Bank's name appears in the body of the judgment as "Guaranty Bond State Bank," and as "Guaranty Bond State Bank, of Tomball, Texas." In the reverse index of the judgment under "M" appears the name "Morris, A. W.;" the index does not reflect that the judgment was against Morris et al., or against Morris and Ramsey. In the reverse index under "R" appears the name "Ramsey, J. H." The index does not show that the judgment was against Ramsey et al., or Ramsey and Morris. The abstract shows that the plaintiff in the judgment, appellee Bank, was "Guaranty Bond State Bank of Tomball." The judgment, itself, recites, "It is therefore ordered, adjudged and decreed by the Court that the plaintiff, Guaranty Bond State Bank, have and recover of and from the defendants, A. W. Morris and J. H. Ramsey * * *."

Under the following authorities it is our conclusion that the index as to the Bank was in substantial compliance with the statute. Texas & N. O. R. Co. of 1874 v. Barber, 31 Tex.Civ.App. 84, 71 S.W. 393; Underwriters' Fire Ass'n v. Henry, Tex. Civ.App., 79 S.W. 1072; Willis v. Downes, Tex.Civ.App., 46 S.W. 920; McLarry v. Studebaker Bros. Co. of Texas, Tex.Civ. App., 146 S.W. 676; Schneider v. Dorsey, 96 Tex. 544, 74 S.W. 526. On the statement we have made the words "of Tomball" should not be construed as a part of the corporate name of the Bank, but merely as its principal place of business, and, therefore, its omission was immaterial. Texas & N. O. R. Co. v. Barber, supra. Appellant has cited no authority in support of its contention that the index was fatally defective because the name of defendant Ramsey was not shown with the name of defendant Morris, under the letter "M," or vice versa. The statute does not make the requirement; Art. No. 5448 provides that at the time the abstract is recorded the clerk shall, "enter it upon the alphabetical index to such judgment record, showing the name of each plaintiff and of each defendant in the judgment, and the number of the page of the book upon which the abstract is recorded."

Willis v. Downes, Tex.Civ.App., 46 S.W. 920, supports this construction of the statute.

It is our conclusion that the Bank's abstract of its Harris County judgment was lawfully recorded in Montgomery County, and created a lien in its favor against all the real estate owned by Judge Morris in Montgomery County not exempt from execution. On the facts stated, the lien did not attach against any part of Lots 7, 8, 9, and 10 of Block No. 12 of the Ayres Addition to the City of Conroe on the date the abstract was filed for record; on that date the property in controversy constituted a part of the homestead of Judge and Mrs. Morris. But under the evidence Judge and Mrs. Morris abandoned the land in controversy as a part of their homestead four or five months before the execution by them to Allen of the contract lien described above, which was assigned by Allen to appellant, and which constitutes an essential link in appellant's chain of title. Judge Morris and his wife abandoned the property in controversy as a part of their homestead by erecting thereon an apartment house, and surrendering its possession and control to their tenants. Mays v. Mays, Tex.Civ.App., 43 S.W.2d 148. From the moment Judge and Mrs. Morris abandoned this property as a part of their homestead, about May, 1933, it became subject to the abstract of the judgment held by the Bank against Judge Morris. On the facts as stated above, the Bank's lien attached to the property in controversy some four or five months before appellant's contract lien was created, and, therefore, it was superior to appellant's lien.

But appellant insists that its lien had its inception on the 13th day of January, 1933, when Allen, its assignor, advanced Judge Morris $3,000 to be used in constructing the apartment house. On that issue the court found, "On the delivery of the first $3,000.00, the said Morris delivered to Allen an instrument in writing, acknowledging the receipt thereof; the evidence is conflicting as to whether that instrument purported to be a mechanic's lien; it was never recorded, was

not produced upon the trial, and the cross-plaintiff, Texas Building & Mortgage Co., failed to establish by a preponderance of the evidence that such instrument mentioned, or purported to create, a lien against the property in question." The burden rested upon appellant to show that the transaction described by the court in its twelfth fact conclusion constituted a lien against the land in controversy. On the facts found by the court, no lien of any character was created by the facts as they existed on the 13th day of January, 1933, and no facts existed creating a lien in Allen's favor prior to the execution of the contract lien, on the 23d day of November, 1933, which bore date of the 16th day of January, 1933. All fact issues essential to appellant's recovery on this point were found against it by the trial court.

Because the improvements upon the property in controversy were paid for by money furnished by Allen, appellant insists that, if it had no lien on the land in controversy it should be awarded an equitable lien, with foreclosure against the improvements. We shall not enter into a discussion of the point of law involved, because appellant, on any construction of the .law, is foreclosed by the court's twelfth fact conclusion. The court found in effect that Allen advanced the money without any understanding that he was to have a lien against the improvements for his security.

It follows that the judgment of the lower court should be affirmed, and it is accordingly so ordered.