In re Israel ROSENFIELD, Debtor.

Israel ROSENFIELD, Plaintiff,

v.

ALLOY & STAINLESS, INC. and First Texas Bank, Defendants.

Bankruptcy No. 385–31011 M–11.
Adv. No. 386–3068.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

June 25, 1986.

Philip I. Palmer, Jr., Palmer, Palmer & Coffee, P.C., Dallas, Tex., for plaintiff.

Paula J. Miller, Jerry Lastelick and Jeff Sherman, Carrington, Coleman, Sloman & Blumenthal, Dallas, Tex., for defendants.

## MEMORANDUM OPINION

ROBERT C. McGUIRE, Chief Judge.

### Statement of the Case

The parties have stipulated to the following facts: On July 9, 1984, Alloy & Stainless, Inc. ("A & S") obtained a judgment in the United States District Court for the Northern District of Texas against Technical Alloy Metals, Inc. ("TAMI"), Israel Rosenfield ("Rosenfield", "Debtor", or "DIP") and R. Joel Ridout ("Ridout") (collectively "Defendants"). The above mentioned parties agreed to entry of an Agreed Judgment ("Judgment") in favor of the plaintiff, A & S, in the principle amount of $144,250.00. The judgment was entered into by all parties to the action as a result of negotiations between all parties, who were represented by competent counsel. The negotiations produced a formal written settlement agreement ("Agreement") which authorized A & S, immediately upon execution of the Agreement, to have the District Court enter the Judgment. Pursuant to the Agreement, A & S was authorized to abstract both the Judgment and the Agreement simultaneously. A & S could not execute on the Judgment, however, until the Defendants defaulted on the

payment schedule listed in the Agreement. The Agreement contained the following payment schedule: On or before July 23, 1984, Defendants were to deliver a certified or cashier's check payable to A & S in the amount of $25,000.00 and were to commence a payment schedule of $5,000.00 per month beginning October 22, 1984, through September 26, 1986. The last payment was reduced to $4,250.00. According to the Agreement, failure to deliver a cashier's check for the requisite amount on the due date constituted a default by the Defendants, thereby triggering A & S' right to execute on its judgment without further notice to the Defendants. The Agreement provided that, if a default occurs, and "A & S executes on the Judgment, Defendants will be entitled to a credit for any payments made pursuant to this Agreement prior to the date of Default." A & S had agreed in the Agreement that it would release its judgment lien upon completion by the Defendants of the payment schedule. The Agreement contained a provision expressly representing that no other statement, warranties or documents were applicable to the Agreement; the language in the Agreement, coupled with the exhibits, constituted the entire agreement between the parties.

On July 18, 1984, A & S forwarded an abstract of judgment form to the United States District Clerk for the Northern District of Texas.

Pursuant to the Agreement, A & S received from Ridout a cashier's check in the amount of $10,000.00 on July 23, 1984. A & S, through its attorney, received a personal check from Rosenfield in the amount of $15,000.00 on that date as well. Pan American Bank honored Rosenfield's check on July 27, 1984.

On July 25, 1984, the United States District Clerk issued an Abstract of Judgment.

On August 6, 1984, the County Clerk of Dallas County, Texas, recorded the Abstract of Judgment and the Settlement Agreement in the Deed Records of Dallas County. The Abstract of Judgment did not reflect the payments made by Debtor and Ridout in July, 1985.

On August 24, 1984, the same Abstract of Judgment and Settlement Agreement were recorded in the Deed Records of Wood County, Texas. The Abstract did not reflect the payments made by Debtor and Ridout in July, 1985.

Default under the Agreement occurred on October 22, 1984, when the $5,000.00 payment then due pursuant to the Settlement Agreement was not made.

Although the abstract of Judgment and Agreement were recorded in the Deed Records in Wood County and Dallas County, Texas, the Abstract of Judgment did not reflect any credit for payments made by any of the Defendants. Rosenfield did not make the payment of $5,000.00 which was due on October 22, 1984, pursuant to the Agreement. Accordingly, A & S filed an application for writ of garnishment on Debtor's account at Pan American National Bank on November 29, 1984, which was issued that day. Judgment was entered on January 18, 1985, and the judgment was satisfied on January 21, 1985. A & S received $818.77 as a result of the garnishment proceeding, in addition to its attorney fees of $250.00. Rosenfield also owned certain real property in Wood County referred to in his bankruptcy schedules as the "Holly Lake Property" which he valued in his schedules at $5,600.00. Rosenfield openly concedes that he has no equity in the property if the A & S lien is upheld.

Rosenfield filed his voluntary petition under Chapter 11 on April 12, 1985. The Debtor-in-Possession ("DIP") filed this action on January 17, 1986. The complaint, *inter alia*, sought to avoid the A & S judgment lien. The DIP alleged that avoidance of the judgment lien would result in additional assets available to the estate for distribution to creditors. The DIP alleged that A & S failed to comply with Texas statutes governing judgment liens, namely, Art. 52.003 and Art. 52.004 of the Texas Property Code. The DIP additionally alleged in his complaint that the Abstract of Judgment in Wood County did not include

the names of all the defendants as required under Art. 52.004(b)(2) of the Texas Property Code. A review of the main bankruptcy file shows that the Abstract of Judgment filed in Wood County, Texas did contain all the names of the defendants in the underlying litigation. The abstract was offered into evidence by A & S on a motion to lift stay filed in the bankruptcy case by A & S. (See Ex. 1 to stay hearing held November 8, 1985). Hence, to the extent that Plaintiff's complaint rests on the failure of the Wood County abstract to list all defendants, this Court will deny the DIP's requested relief. The DIP's complaint also contained two counts alleging preferential transfers, including a payment made by Pan American Bank from Rosenfield's account at that bank to A & S as a result of a writ of garnishment and the obtaining by A & S of a garnishment lien upon Rosenfield's account at First Texas Bank.

The parties have raised the following legal issues, to wit:

(1) Does the Court have jurisdiction over the DIP's complaint insofar as the DIP has sought to avoid the A & S Judgment lien?

(2) Did the concurrent filing of the Agreement and the Abstract of Judgment by A & S constitute sufficient compliance with the controlling Texas statutes to uphold the judgment lien?

(3) Do the transfers alleged as preferential fall within the ambit of 11 U.S.C. § 547?

(4) Can Texas American Bank offset the Rosenfield account if the A & S lien is avoided under § 547 of the Bankruptcy Code?

### Conclusions of Law

A & S vigorously contested the Bankruptcy Court's jurisdiction over the instant action insofar as the DIP attempted to avoid A & S' judgment lien. A & S argued that:

> [It] believes that the grant of adjudicatory power to this Court on issues of the validity of liens, in 28 U.S.C. § 157(b)(2)(K), extends only to cases where the validity of lien is attacked on a substantive bankruptcy basis, i.e., as a preference, fraudulent conveyance, statutory lien or post-petition transfer. It does not extend to exclusively state law issues where the only nexus to the underlying bankruptcy is that the debtor is in bankruptcy and has standing to seek avoidance (on bankruptcy or non-bankruptcy grounds) under § 544.

A & S' Reply Brief, at pp. 6–7.[1]

The A & S' objection contends that, because the DIP's attempt to avoid the A & S' judgment lien under § 544 turns on state law, it is outside the jurisdiction of the Bankruptcy Court as an Article I court. A & S misconstrues the current jurisdictional scheme implemented through enactment of the Bankruptcy Amendment and Federal Judgeship Act ("BAFJA") and misreads BAFJA's progenitor, *Northern Pipeline Cons. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) ("Marathon"). The breadth of the plurality opinion has created confusion, both in the bench and bar, regarding the precise ruling in *Marathon, supra,* although the decision is generally regarded as holding unconstitutional the pervasive jurisdiction granted the Bankruptcy Courts in 28 U.S.C. § 1471(c). Because A & S' objection focuses almost exclusively on what it apparently perceives to be the *Marathon* ruling—the constitutional prohibition against Article I courts adjudicating any and all state law issues—the *Marathon* decision is an appropriate starting point for analyzing A & S' position.

Because a majority was only achieved through the concurrence of Justices Rehnquist and O'Connor, that concurrence de-

---

1. The statutory lien or fraudulent conveyance mentioned in A & S' brief apparently must arise only in a bankruptcy context. Hence, according to A & S, the Bankruptcy Court could only adjudicate a fraudulent conveyance if the grounds were solely federal (*i.e.,* avoidance under *Durrett v. Washington National Ins. Co.,* 621 F.2d 201 (5th Cir.1980) for inadequate consideration), but could not try the issue if the trustee sought to avoid the transfer under state law.

limits the decision's breadth as to a Bankruptcy Court's jurisdiction. Justice Rehnquist admonished "that this Court should decide no more of a constitutional question than is absolutely necessary [which] accords ... with sound judicial policy." *Marathon, supra,* 458 U.S. at 90, 102 S.Ct. at 2881. He concurred on the grounds that "the claims of Northern arise entirely under state law" and "[t]he lawsuit is before the Bankruptcy Court only because the plaintiff [had] previously filed a petition for reorganization in that court." *Id.* at p. 90, 102 S.Ct. at p. 2881. They also agreed that the "grant of authority [under § 1471 was] not readily severable from the remaining grant of authority to the bankruptcy courts under § 1471." *Id.* at 91–92, 102 S.Ct. at 2882. Other courts have similarly read the *Marathon* decision; those courts include *In re Shaford Cos.,* 52 B.R. 832, 13 B.C.D. 533, 534 (Bankr.D.N.H.1985); *Holland Am. Ins. v. Succession of Roy,* 777 F.2d 992, 998–999 (5th Cir.1985); *See also, Thomas v. Union Carbide Agric. Products Co.,* — U.S. —, 105 S.Ct. 3325, 3332–3334, 87 L.Ed.2d 409 (1985).

■ *Marathon* should not be read as precluding a Bankruptcy Court from considering an issue merely because state law must be considered. 28 U.S.C. § 157(b)(3) provides in part that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." While the perimeter of a Bankruptcy Court's jurisdiction appears clear insofar as *Marathon* precludes adjudication of solely state law issues wholly unrelated to the parent bankruptcy, the precise role state law issues may play in a bankruptcy appears to require a case by case analysis. Hence, proceedings ostensibly core may well be considered outside the ambit of a Bankruptcy Court's jurisdiction. *See, e.g., In re Bokum Resources Corp.,* 49 B.R. 854, 13 B.C.D. 11 (Bankr.D.N.M.1985). *But, see, In the Matter of Salem Mortgage Co.,* 50 B.R. 34 (Bankr.E.D.Mich.1985) in which Judge Graves discussed the relationship of state law issues to the bankruptcy proceeding and concluded:

The cases further enhance what the Court has begun to make vividly clear: The congressional authority to aid in the reorganization of troubled debtors is of such vital importance that other interests, including those which may otherwise be rights created by state law, and interests of the federal government must give way to the aim of Congress. *N.L. R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), *United States v. Whiting Pools,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

*Salem Mortgage, supra,* at 39. *Accord, In re Shell Materials, Inc.,* 13 B.C.D. 185 (Bankr.M.D.Fla.1985). Bankruptcy Courts are not *per se* precluded from considering state law issues, especially when resolution of those issues is determinative of a federal question. The difficult choices come into play when the court must determine whether the relationship of the state law issue to the resolution of a bankruptcy issue is sufficiently close to allow adjudication by the Bankruptcy Court.

The instant case, however, does not present a close choice. Section 544 of the Bankruptcy Code is known as the "strong arm" statute and gives the trustee or debtor-in-possession (*See,* § 1107, pursuant to § 544(a)) the simultaneous status of a hypothetical *bona fide* purchaser of real property; of a creditor holding a judicial lien; and of a creditor who extends credit to the debtor at the time of the commencement of the case and possesses an unsatisfied execution. The hypothetical status accorded the trustee or debtor-in-possession confers the attendant powers of that status to avoid creditors' liens which are improperly perfected. To limit the avoiding powers under § 544 to avoiding only liens arising from federal statutes robs the statute of its intended power. One commentator has stated that the status of the trustee under § 544 and the attendant powers flowing from that status constitute *"federal* questions governed by the Bankruptcy Code, but the extent of the trustee's rights, remedies and powers as a lien credi-

tor are measured by the substantive law of the jurisdiction governing the property in question." 4 Collier on Bankruptcy, ¶ 544.-02, pp. 544–8–9 (15th ed.) (emphasis added). Moreover, under the jurisdictional scheme envisioned by A & S, the term "applicable law" in § 544(b) would be limited to federal statutes, a result that would eliminate this provision's historical power under both the Bankruptcy Act of 1898, as modified by the Chandler Act of 1938 and the Bankruptcy Code of 1978, to avoid transfers under state law. A & S failed to cite any courts construing § 544 according to A & S' characterization. Many Bankruptcy Courts have interpreted the statute contrary to the A & S interpretation. *See, e.g., Matter of Midwestern Food Stores, Inc.,* 21 B.R. 944, 947 (Bankr.S.D.Ohio 1982); *Accord, Matter of Toledo,* 17 B.R. 914 (D.P.R.1982).

■ A & S has conceded that the Bankruptcy Courts have jurisdiction over preference actions under § 547, and, thus, has focused its objection on adjudication of the lien avoidance action under § 544. The Court finds that the instant action constitutes a core proceeding and that it has jurisdiction over the entire adversary proceeding, including that aspect of the Plaintiff's complaint seeking to avoid A & S' judgment lien.

The DIP has attacked A & S' judgment lien under § 544 claiming that A & S did not comply with the statutes governing abstracting of judgments. A & S replied that "[a]bout the only thing A & S and Debtor in Possession agree on is that the statutory requirements for creation of an abstract of a judgment lien must be only substantially complied with." A & S' Reply Brief, p. 10. A & S' position is that the simultaneous filing of the Agreement with the Abstract of Judgment constitutes sufficient compliance with the governing state statutes. Further, A & S argues that, because it had no right to execute on the Judgment until a default occurred under the Agreement, any failure to list credits was the result of a bargained agreement between the parties. Accordingly, A & S asserts Rosenfield should not be able to avoid the judgment

lien based on conditions of the Agreement which he earlier bargained for and obtained. To avoid the lien because it did not comply with the statute rewrites the terms of the Agreement according to A & S. Despite the arguments posed by A & S, the judgment lien will be avoided for the following reasons.

The relevant statutes are Tex.Prop.Code Ann. §§ 52.003 and 52.004 (Vernon's 1984). Section 52.003 provides:

An abstract of a judgment must show:

(1) the names of the plaintiff and defendant;

(2) the birthdate and driver's license number of the defendant, if available to the clerk or justice;

(3) the number of the suit in which the judgment was rendered;

(4) the defendant's address, or if the address is not shown in the suit, the nature of citation and the date and place of service of citation;

(5) the date on which the judgment was rendered;

(6) the amount for which the judgment was rendered and the balance due; and

(7) the rate of interest specified in the judgment.

Section 52.004 provides:

(a) The county clerk shall immediately record in the county judgment records each properly authenticated abstract of judgment that is presented for recording. The clerk shall note in the records the date and hour an abstract of judgment is received.

(b) At the same time an abstract is recorded, the county clerk shall enter the abstract on the alphabetical index to the judgment records, showing:

(1) the name of each plaintiff in the judgment;

(2) the name of each defendant in the judgment; and

(3) the number of the page in the records in which the abstract is recorded.

(c) The clerk shall leave a space at the foot of each recorded abstract for the

entry of credits on or satisfaction of the judgment and shall make those entries when credits are properly shown.

A & S concedes that it failed to list any credits for payments made by Rosenfield prior to his bankruptcy. *See,* Stipulations 9 and 10. Thus, the threshold issue is whether A & S substantially complied with the above statutes.

Historically, Texas courts have construed the statutes governing judgment liens strictly. In *Askey v. Power,* 36 S.W.2d 446 (Tex.Com.App.1931), the court affirmed the Court of Civil Appeals' decision upholding the trial court's ruling that a lien was not created when the abstract of judgment recorded by the clerk was $.18 less than the actual judgment because a judgment lien required "substantial compliance" with the then-governing statute, which, similar to present law, required the abstract to show the amount due on the judgment. Although the defendant argued that the mistake was clerical, the *Askey* court ruled that the evidence was insufficient to establish a judgment lien despite the agreement of the parties that the amount listed in the abstract was only $.18 less than the judgment itself.

Texas courts have interpreted literally the language of the statutes governing the fixing of a judgment lien since the late nineteenth century. *See, e.g., Evans v. Frisbie,* 84 Tex. 341, 19 S.W. 510 (1892). The Texas Supreme Court ruled in *Evans* that an asserted judgment lien was not fixed for two reasons, namely, that the abstract was filed substantially later than the judgment was rendered, hence, making the judgment dormant at that time and that the abstract did not reflect the payments required to be credited to the abstract. Although the dormancy of the judgment was fatal to the creation of a lien by itself, the Court's strict compliance with the statutes governing the creation of judgment liens attests to the uniform strictness with which Texas courts apply those statutes. *See also, McGlothlin v. Coody,* 59 S.W.2d 819 (Tex.Com.App.1933); *Fordyce-Crosset Sales Co. v. Erwin,* 121 S.W.2d 491 (Tex.Civ.App.—Amarillo 1938, no writ); *Accord, Chamlee v. Chamlee,* 113 S.W.2d 290 (Tex.Civ.App.—Waco 1938, no writ).

Recent case law has also interpreted the governing statutes strictly. In *Reynolds v. Kessler,* 669 S.W.2d 801 (Tex.App.—El Paso 1984, no writ), the issue of whether the abstract of judgment substantially complied with the state statute was discussed. The court also examined the issue of substantial compliance in regard to judgments abstracted by the Clerk of the United States District Court and concluded that it was governed by the requirements of the then-controlling statute, Tex.Civ.Stat.Ann., arts. 5447 and 5449. The *Reynolds* court recognized that the abstract of judgment must comply closely with the statutory requirements; failure in that case to list the date of the judgement was fatal to the creation of the judgment lien. The *Reynolds* court concluded that "[s]ince a judgment lien is purely statutory, the statute must be substantially complied with before the lien will attach." *Reynolds, supra,* at 804–05. *See also, Day v. Day,* 610 S.W.2d 195 (Tex.Civ.App.—Galveston 1980, writ ref'd. n.r.e.).

A second ground for the *Reynolds* court ruling that the lien did not fix was the failure to list all the defendants and plaintiffs in alphabetical order as required by the statute. Despite the argument posited by the judgment creditor that the third party who purchased the realty at a sheriff's sale possessed knowledge of the missing items required by statute, the *Reynolds* court ruled that even actual knowledge of the required information missing from the abstracted judgment was insufficient to support creation of a judgment lien. The *Reynolds* court stated:

> A judgment lien is created only by compliance with the lien creation statutes. When the abstract is so improperly recorded and indexed that it creates no lien, even actual notice of the defective record cannot take the place of a proper record as to the purchaser of the land.

*Id.* at 806. The lien will arise, if at all, by compliance with the statute.

Strict compliance with the statutory requirements does not always result in avoiding the asserted judgment lien. The court in *Fred Rizk Construction Co. v. Cousins Mortgage & Equity Investments*, 627 S.W.2d 753 (Tex.App.—Houston [1st Dist.]—1982, writ ref'd. n.r.e.) ruled that failure to include the birthdate and driver's license number was insufficient to render the judgment lien void. The court reasoned correctly that a literal reading of the statute provides that the birthdate and driver's license number are required, *only if available to the clerk of the court. Rizk, supra*, at 775–76. Because the undisputed evidence showed that the birthdate and driver's license were unavailable, the court ruled that failure to list those items was not fatal to execution of the lien. *Rizk Construction, supra*, stands for the proposition that the statutes governing judgment liens are to be literally construed.

■ The rationale behind the strict construction applied to these statutes by Texas courts was discussed by the court in *Barton v. Parks*, 127 S.W.2d 376 (Tex.Civ.App.—Galveston 1939, writ ref'd) which stated:

> The Supreme Court, in the case of *First State Bank of Amarillo v. Jones*, 107 Tex. 623, 183 S.W. 874, 876, lays down the following rule: 'A judgment lien holder is not in the same attitude as an innocent purchaser for value without notice. The latter has expended his money in good faith to the amount of the purchase price of the land, and is justly entitled to be held harmless. It is right that the loss under such circumstances should be visited upon the landowner whose negligence, in failing to give notice through the deed records of his ownership, occasioned the loss, rather than it should fall upon the innocent purchaser who was without fault. The judgment lienholder is in a different attitude. He is not in any sense an innocent purchaser. If his lien fails to attach, he loses nothing. His judgment still remains unimpaired in its full amount...

*Barton, supra*, at 379. Because the trustee or debtor-in-possession assumes the sta-

tus, among others, as a *bona fide* purchaser of realty, his claim to the property in question is superior to the claim of a judgment creditor asserting a claim based on an insufficient judgment lien.

■ The instant action revolves around disposition of the character of the A & S claim, to wit, whether it is secured or unsecured and not whether the claim should be allowed. Despite failure by a judgment creditor to comply with the statutory requirements, the creditor still has his claim arising from that judgment.

The purpose of statutes governing the fixing of judgment liens is to provide "notice to strangers of the existence of the judgment lien thereby sought to be established." *Citizens State Bank v. Del-Tex Inv. Co.*, 123 S.W.2d 450, 452 (Tex.Civ.App.—San Antonio 1938, writ dism'd jdmt cor.). The effect of compliance with the statutory requirements is that "subsequent purchasers or encumbrancers of property sought to be charged upon notice of the lien thereby created [have actual notice]." *Id.*, at 452. *Del-Tex* involved a recital in the abstract that inadvertently listed the court rendering judgment as the Ninety-second (92nd) instead of the Ninety-third (93rd) Court. The *Del-Tex* court found that other information in the abstract was sufficient to put a third party on notice that the judgment was actually rendered in the 93rd Court, and, thus, the judgment creditor had substantially complied with the statutory requirements.

■ In the instant case, the Agreement, despite providing a payment schedule, did not provide sufficient information such that a third party could easily determine the amount credited to the judgment on behalf of Rosenfield. Accordingly, I do not find that A & S substantially complied with the statutory requirements for fixing a judgment lien based on the evidence presented by the parties.

A & S' reliance on two cases it cited in its brief, *Gullett Gin Co. v. Oliver*, 78 Tex. 182, 14 S.W. 451 (1890) and *James v. Midland Grocery & Dry Goods Co.*, 146 S.W.

1073 (Tex.Civ.App.—El Paso 1912, writ ref'd), is misplaced. In both cases, the respective courts found that the documents accompanying the abstract could provide the information required by the statute, and, thus, constitute sufficient compliance with the statute. *Gullett Gin, supra,* involved a dispute as to whether the abstract was sufficient because it listed the defendant, a partnership, as "Mitchell & Scruggs" and apparently did not list their individual names. The Court held that an accompanying statement by the United States Circuit Clerk listing the case as well as the defendants' individual names gave sufficient notice to comply substantially with the then-governing statute. However, the court found that despite this tabular statement accompanying the abstract, the failure to list each defendant alphabetically in the index was fatal to the creation of the lien. The Court noted that listing only the partnership name, despite the property being partnership property, under "M" for "Mitchell & Scruggs" would require "a third person, dealing with Scruggs, who had no knowledge of the particular judgment ... to examine the entire record ..." *Gullett Gin, supra,* 14 S.W. at 452. Although a short accompanying statement which could supplement information required by statute may well constitute sufficient compliance, the instant case involves a lengthy accompanying document which does not on its own terms provide the requisite statutory information. Hence, *Gullett Gin* does not support A & S' position that the Agreement was sufficient to constitute compliance with the statute because a third party could not easily determine the amount of payments made by Rosenfield on that judgment as is required.

In *Midland Grocery, supra,* the court stated that "if the certificate is recorded, although not required by law to be recorded, it may in itself be treated as the abstract, and, if it contains the essential elements, the recording of this certificate is sufficient as the recording of an abstract of judgment." *Id.,* at 1074. In *Midland Grocery, supra,* the dispute revolved around whether the abstract of judgment complied with the governing statute thereby creating a valid judgment lien. The abstract did not contain the cause number although a clerk's certificate filed concurrently with the abstract listed this information. The *Midland Grocery, supra,* found that the main purpose of the statute was notice and noted that it was "apparent that no person investigating the record could be misled by the lack of the number in the abstract when the same appears immediately contiguous thereto in the certificate..." *Midland Grocery, supra,* at 1074. In the instant case, the Agreement cannot be substituted for strict compliance with the statute when that document does not on its face provide the statutory information.

■ Although A & S relies on language in *Gordon-Sewall & Co. v. Walker,* 258 S.W. 233 (Tex.Civ.App.—Beaumont 1924, writ dism'd) for the proposition that the duty to update the credits on the abstract falls on the judgment debtor, the undisputed facts of this case show that at the time the Abstract was recorded, the payments had been made, and, thus, the burden of providing correct information at the time of issuance and recording fell on A & S. *Gordon-Sewall* involved subsequent credits on a judgment pursuant to a sale of collateral under execution; the instant case involves failure of the judgment creditor, at the time of issuance and recording, to provide the required information.

■ A & S also argues that because the Agreement specified that the credits for payments would be reflected upon a default on the payment schedule listed in the Agreement, no credits were intended to be listed in the abstract pursuant to the parties agreement. Hence, the event which would have entitled Rosenfield to a credit occurred subsequent to the date on which the abstract was filed and recorded in Wood and Dallas counties. A & S cites *Texas Building & Mortgage Co. v. Morris,* 123 S.W.2d 365 (Tex.Civ.App.—Beaumont 1938, writ dism'd) as controlling case law. *Texas Building, supra,* involved a claim where a judgment creditor failed to list the

correct amount due on the judgment by virtue of the judgment creditor's previous bidding in part of its judgment at a foreclosure sale of the debtor's realty; the court recognized that the statutory requirements are to be strictly construed, including the requirement that the abstract show the amount of the judgment and the balance due. Nonetheless, in *Texas Building*, the judgment creditor's failure to pay the sale costs in cash to the sheriff precluded, as a matter of law, the consummation of the sale. At the time of filing and recording, there was no credit to be entered because the sale had not been fully completed.

In the instant case, although the Agreement provided that the credits for payments would be listed only in the event of a default, the payments made were not precluded as a matter of law from being credited because the payments had been made by the Defendants. Despite the Agreement, as between the parties, that the payments would not be credited, the payments were valid and complete transfers at the time of the filing and recording of the abstract of judgment. Assuming that the Agreement, as between the parties, is sufficient to prevent Rosenfield, individually, from asserting the judgment lien was invalid due to the failure to list his payment on the abstract of judgment, it is insufficient to preclude the DIP asserting the powers under § 544, including his status as a *bona fide* purchaser of realty, from seeking to invalidate the asserted judgment lien for the benefit of all creditors.

The next issues to consider are whether the garnishment of Rosenfield's account at Pan American Bank and the subsequent garnishment lien on Rosenfield's account at First Texas Bank constitute voidable preferences.

11 U.S.C. 547(b) provides that:

Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition if such creditor at the time of such transfer was an insider;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The threshold issue in the instant case is when the actual transfer took place as to the garnishment of the debtor's account at Pan American Bank.

The stipulated facts show that A & S filed its application for writ of garnishment on November 29, 1984, and that the writ was issued that day. Presumably service was prior to December 29, 1984, since the judgment was entered on January 18, 1985, and that judgment was satisfied on January 21, 1985. The Bankruptcy Court in *In re McCoy*, 46 B.R. 9 (Bankr.D.Ariz.1984) stated that although the term "transfer" is defined in the Bankruptcy Code, when that transfer occurred depends on state law. The court concluded that when a transfer occurred would:

[D]epend upon the significance each state gives to the occurrence of either the issuance and service of a writ of garnishment, or the final order or judgment on the garnishment action. The event that triggers a perfection under state law would determine when the transfer occurred for bankruptcy purposes.

Thus, bankruptcy courts presiding in states which create a lien upon the ser-

vice of a writ of garnishment have ruled against the trustee in a preference action when the writ is served prior to the ninety- (90-) day period. This is so even if actual payment comes within the ninety- (90-) day period. *Walutes v. Baltimore Rigging Company,* 390 F.2d 350 (4th Cir.1968); *In re Cox,* 10 B.R. 268 (Md. 1981); *In re Brinker,* 12 B.R. 936 (Mn. 1981).

*McCoy, supra,* at 11.

■ Under Texas law, the event determining when the garnishment lien becomes perfected was discussed in *Small Business Inv. v. Champion Intern. Corp.,* 619 S.W.2d 28 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). The *Small Business Inv.* court noted that "a garnishor's rights are determined by priority in time and priority in time is determined by service of the writ. When a writ of garnishment is granted and a summons issued but not served the requisites of the law are not satisfied. Without service, no control or custody is gained by the answer of the garnishee." *Small Business Inv., supra,* at 30 (citations omitted). Thus, the date of service of the writ of garnishment controls when the transfer actually occurred despite payment having been made during the ninety-day period. *See, In re Ryder,* 59 B.R. 868 (Bankr.S.D.Fla.1986) (Court reached same conclusion under similar Florida law). Because the movant, Rosenfield, did not show that the actual service on the Pan American Bank occurred within the ninety-day time period contemplated under § 547, the Plaintiff's preference action as to the Pan American Bank payment will be denied at this time.

■ The lien on the Rosenfield account at First Texas Bank does fall within the statutory period and does constitute a transfer under the Bankruptcy Code. See § 101(48). A garnishment lien, if the transfer date as provided under state law occurs within the prescribed time period in § 547, does constitute a preference. *See, e.g., In re Town & Country Color Television, Inc.,* 22 B.R. 421 (Bankr.D.N.M.1982); *In re Riverfront Food and Beverage Corp.,* 29 B.R. 846 (Bankr.E.D.Mo.1983). The Court finds that the garnishment lien on Rosenfield's account at First Texas Bank constitutes a voidable preferential transfer under § 547 because the transfer date as provided by Texas law occurred within the statutory period.

Under § 551 "the trustee succeeds to such rights as he may defeat in the hands of the transferee of an avoided transfer. *See,* House Report No. 595, 95th Cong. 1st Sess. 376 (1977) and 124 Cong.Rec.H. 11097 (daily ed. Sept. 28, 1978); Senate Report No. 989, 98th Cong., 2d Sess. 91 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787." *See, In re Vermont Fiberglass, Inc.,* 44 B.R. 505, 511, *motion for rehrng. denied,* 45 B.R. 603 (Bankr.D.Vt.1984). If a lien can be avoided under the trustee's avoiding powers of the Bankruptcy Code, then the lien will accrue to the estate. *See, e.g., In re LaPalomento,* 29 B.R. 291 (Bankr.D.N.J.1983) (if mortgage could be avoided under § 544 powers, then the lien would inure to estate). In the instant case, the DIP has the rights of A & S under § 551, and, thus, the garnishment lien will be preserved for the benefit of the general creditors of the estate. First Texas Bank may not set off the account under § 553; in its garnishee answer on April 12, 1985, it admitted the debt, without claiming offset.

For the foregoing reasons, the Court finds that it has jurisdiction to try the instant case, that the A & S judgment lien is avoided pursuant to § 544, that the garnishment lien on Rosenfield's account at First Texas Bank constitutes a preference and that the avoided lien resulting from that preference action will accrue to the estate. Judgment will be entered accordingly.