**GARY E. PATTERSON & ASSOCIATES, P.C.,**
**Appellant,**

v.

**Ronald W. HOLUB, Mary R. Holub, and Houston Title Company, Appellees.**

No. 01–04–00108–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 10, 2008.

Timothy A. Hootman, Houston, John E. Russo, Conroe, for Appellant.

Pamela Heckman Zettlemoyer, Bradford W. Irelan, Irelan & Hargis, P.L.L.C., Thomas W. Sankey, Thomas W. Sankey, P.C., Houston, for Appellees.

Panel consists of Justices TAFT, KEYES, and HANKS.

**OPINION**

TIM TAFT, Justice.

Appellant, Gary E. Patterson & Associates, P.C. ("the Law Firm"), appeals a take-nothing judgment rendered, upon various motions for summary judgment, against it and in favor of appellees, Houston Title Company ("HTC") and Ronald W. Holub and Mary R. Holub (together, "the Holubs"). We determine (1) whether the trial court erred in rendering judgment, upon the traditional summary-judgment motion of the Holubs and HTC, declaring that an abstract of judgment recorded by the Law Firm did not create a valid lien; (2) whether the trial court erred in implicitly denying the Law Firm's hybrid cross-motion for summary judgment which asserted that the same abstract of judgment created a valid judgment lien; (3) whether the Holubs' and HTC's no-evidence summary-judgment motion was legally sufficient; (4) whether the Law Firm has challenged on appeal every basis for no-evidence summary judgment below; (5) whether we must reach issues relating to aspects of the Holubs' and HTC's no-evidence summary-judgment motion that were not a basis for the trial court's ruling or that concern an individual who is not a party on appeal; and (6) whether material fact issues precluded the trial court from granting the Holubs' and HTC's no-evidence summary-judgment motion on any of the Law Firm's remaining causes of action for damages. We affirm.

**Background**

David D. Thomas owed the Law Firm $47,372.59 in attorney's fees for legal work that the Law Firm had done for him. Sometime before 1996, the Law Firm sued Thomas for those sums. On January 4,

1996, Thomas approached the Law Firm about settling the suit. The parties settled that same day, agreeing to the following matters ("the settlement agreement"):

> **WHEREAS Thomas owes Patterson $47,372.59 for legal services rendered**
>
> . . . .
>
> WHEREAS on or about January 4, 1996, Thomas reached an agreement with Patterson to pay **$22,500.00 as settlement** of the lawsuit.
>
> . . .
>
> NOW THEREFORE AND IN CONSIDERATION of the mutual covenants contained herein, and other good and valuable consideration, the receipt of which is acknowledged, the parties agree as follows:
>
> 1. **Dave Thomas agrees to pay a total principal amount of $22,500 to [the Law Firm] by paying $500 down** and monthly installments of principal including interest of $300.00 beginning of February 1, 1996 and continuing on the first of each month thereafter until all principal is paid. The principal amount shall not accrue interest.
>
> 2. Thomas agrees to execute and file with the court an answer to the Lawsuit consisting of a general denial. Thomas also agrees to execute a *Non–Appealable Agreed Final Judgment* ("Judgment") along with a joint motion for entry of judgment. Thomas agrees and understands that he may not appeal the Judgment nor contest any element of the Judgment. Thomas agrees that the Judgment shall be binding and final in all respects.
>
> . . .
>
> 9. *Entire Agreement.* **This document, and the Judgment, represent the entire understanding of the Parties hereto** and there are no oral agreements, understandings, or representations which are being relied upon by the parties.
>
> . . .
>
> 15. **THIS AGREEMENT REPRESENTS THE FINAL AGREEMENT AMONG THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR OR CONTEMPORANEOUS WRITTEN OR ORAL AGREEMENTS AMONG THE PARTIES, NOR BY SUBSEQUENT ORAL AGREEMENTS AMONG THE PARTIES.**

(Italics in original; bolding added.) The settlement agreement further provided that the Law Firm would not execute on the agreed judgment unless Thomas defaulted.

The parties disagree about the sequence of events leading to settlement. In the Holubs' and HTC's version of events, Thomas and Gary Patterson (the partner for whom the Law Firm was named) negotiated a $22,500 settlement on January 4, 1996; Thomas then immediately wrote the Law Firm a check for $500, which represented the settlement agreement's called-for down-payment (*i.e.,* the $500 was to be credited towards the agreed judgment's $22,500 award); and the balance remaining on the settlement amount was thus $22,000. In contrast, in the Law Firm's version of events, when Thomas first approached the Law Firm about settling the suit on January 4, he immediately produced an already executed $500 check; he offered this $500 check in partial payment of the full $47,372.59 that he owed, as an inducement for the Law Firm to enter into settlement negotiations; Patterson accepted the $500 check; the two men then began settlement negotiations; and Thomas and Patterson negotiated the $22,500 settlement, which was in addition to the $500 already paid as an inducement to settle.

The same day that they settled (January 4, 1996), Thomas and the Law Firm signed an agreed judgment, which awarded the Law Firm $22,500—without interest, attorney's fees, or costs—against Thomas. The trial court signed the agreed judgment on January 17, 1996. The Law Firm obtained and recorded an abstract of judgment in March 1996 ("The 1996 abstract"). The 1996 abstract listed the amount of judgment as $22,500 and recited, in pertinent parts, "BALANCE DUE ON JUDGMENT & COSTS: $ *FULL AMOUNT*" and "AMOUNT OF CREDITS: $ *N/A.*" The parties dispute whether a valid lien arose from the 1996 abstract's filing. In a nutshell, the Holubs and HTC assert that no valid lien arose because the 1996 abstract failed to show credit for the $500 that Thomas had paid the Law Firm, which they viewed as a down-payment on an already settled amount. The Law Firm contends that the 1996 abstract created a valid lien because the abstract did not have to show Thomas's $500 payment, given that (among other things) Thomas's payment was a separate offer (on the $47,372.59 total that he owed) to induce settlement negotiations, rather than a down-payment on a settled amount.

What is undisputed is that Thomas never paid anything to the Law Firm after the agreed judgment's rendition. In April 2000, before this suit was filed, Thomas sold his home to the Holubs. HTC was the escrow and closing agent for the sale. As part of the sale, Thomas executed an "affidavit of identity" form provided by HTC, in which he averred that he was not the debtor listed in certain recorded liens having nothing to do with this case and in which he also made a blanket averment that "I have no Abstract of Judgments and no Notices of Federal or State Tax Liens filed of Record against me."

The parties agree that whether the Holubs could purchase Thomas's home as bona fide purchasers for value depended upon whether the Law Firm's lien that arose from the 1996 abstract was valid ("the 1996 lien"). *See, e.g.,* TEX. PROP.CODE ANN. § 13.002 (Vernon 2003) ("An instrument that is properly recorded in the proper county is: (1) notice to all persons of the existence of the instrument. . . ."); *Detering Co. v. Green,* 989 S.W.2d 479, 481 (Tex.App.-Houston [1st Dist.] 1999, pet. denied) (providing that "[a]n instrument that is properly recorded in the proper county provides constructive notice to all persons of the existence of the instrument" and holding that "[a] lien affidavit that does not meet the requirements called for by statute does not provide the protection of constructive notice.").

In December 2001, the Law Firm sued the Holubs, HTC, and Thomas, who is not a party to this appeal. The Law Firm's "live" amended petition alleged that HTC and the Holubs had

- failed to investigate "the validity of Thomas' assertions that he was not the Dave Thomas named in [the Law Firm's] Abstract of Judgment," despite having had notice of the 1996 lien and allegedly "having [had] a duty" to investigate;

- conspired "to create and transfer a fraudulent document [sic], namely the deed" to Thomas's home and his affidavit of identity, in violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA"); [1] and

- "conspired with Thomas and suborned Thomas' perjury by instigating and causing Thomas to falsely swear an oath, under penalty of perjury" by his signing the affidavit of identity.

---

1. *See* TEX. BUS. & COM.CODE ANN. §§ 24.001–.013 (Vernon 2002 & Supp.2007).

The Law Firm further alleged that the Holubs were not bona fide purchasers based on the 1996 abstract and lien and on the conspiracies, torts, and statutory violations that it alleged. Finally, the Law Firm alleged that HTC "knowingly and intentionally, tortiously interfered with the contract between [the Law Firm] and ... Thomas." The Law Firm sought a declaration that the deed from Thomas to the Holubs was "void *ab initio*[,] thereby subjecting the property to foreclosure by [the Law Firm]." The Law Firm also sought actual and exemplary damages from the Holubs and HTC, alleging, in support of the latter damages, malice and "intent to cause substantial injury."

The Holubs and HTC answered and counterclaimed for, among other things, sanctions for frivolous pleadings and a declaration that the 1996 abstract be declared null and void, so that no lien could attach through it in favor of the Law Firm.

On June 2, 2003, the Holubs and HTC filed a joint, hybrid motion for traditional and no-evidence summary judgment. In their no-evidence summary-judgment motion, the Holubs and HTC asserted that (1) there was no evidence of any element of the Law Firm's claims for conspiracy, tortious interference with contract, TUFTA violations, or suborning perjury (assuming that that was even a cause of action); (2) suborning perjury was not a cause of action; (3) there was no evidence that the Holubs or HTC had a duty to investigate the validity of Thomas's averments in the affidavit of identity, resulting in the failure of any claims based upon that duty; and (4) there was no evidence of malice. Their traditional summary-judgment motion asserted, in pertinent part, that the statute of limitations barred the Law Firm's claims and (2) the lien based on the 1996 abstract was invalid. On August 13, 2003, the Law Firm moved for partial, tradition-

al summary judgment, asserting, among other bases for judgment, that (1) its lien based on the 1996 abstract was valid and (2) the home that Thomas sold to the Holubs was subject to that lien. On September 17, 2003, the trial court granted only the Holubs' and HTC's no-evidence summary-judgment motion and dismissed all of the Law Firm's claims against the Holubs and HTC with prejudice. *See* TEX.R. CIV. P. 166a(i). This ruling granted more relief than the Holubs' and HTC's no-evidence motion had requested because the ruling dismissed the Law Firm's request for declaratory relief, which the no-evidence motion did not attack; nonetheless, the Law Firm does not complain on appeal that the trial court granted more relief than was sought. The trial court did not rule, expressly or impliedly, on the Holubs' and HTC's traditional summary-judgment motion or on the Law Firm's motion for partial summary judgment concerning the 1996 abstract's and lien's validity.

The only claims remaining after the rendition of interlocutory summary judgment were the Law Firm's claims against Thomas and the Holubs' and HTC's counterclaims for sanctions and for a declaration that the 1996 abstract and lien were invalid. The Holubs and HTC then filed a separate motion for sanctions, which alleged the same bases for sanctions that they had alleged in their counterclaims. The trial court denied the motion for sanctions by order dated November 4, 2003. This separate order denying sanctions disposed of the claims for sanctions alleged in the Holubs' and HTC's counterclaims. Furthermore, in early 2004, the trial court signed an order non-suiting the Law Firm's claims against Thomas without prejudice. At this point, the Law Firm appealed. However, still pending before the trial court at that time was the Holubs' and HTC's counterclaim for a declaration

that the 1996 abstract and lien were void. The judgment that the Law Firm attempted to appeal was, therefore, interlocutory and unappealable. By order dated September 5, 2006, this Court abated the appeal and remanded the cause for the trial court to dispose of the Holubs' and HTC's counterclaim for a declaration that the 1996 abstract and lien were void, so that the judgment could be made final.

A supplemental clerk's record from the abatement proceedings has been filed, and the cause has been reinstated on the Court's active docket. That record shows that, on remand, the Holubs and HTC filed a new motion for traditional summary judgment on their counterclaim for a declaration that the 1996 abstract was void and that the trial court thus declare that no valid lien arose from it. This traditional summary-judgment motion did not state that it was an amended motion, but it in effect was.[2] The Law Firm filed a response to this new summary-judgment motion, without incorporating by reference its pre-abatement summary-judgment pleadings. Also on remand, the Law Firm filed a hybrid traditional and no-evidence summary-judgment motion on the Holubs' and HTC's declaratory judgment counterclaim, arguing that the 1996 abstract and lien were valid. The Law Firm's post-abatement, traditional summary-judgment mo-

tion did not state that it was an amended motion, but it in effect was.[3]

The trial court granted the Holubs' and HTC's post-abatement summary-judgment motion and rendered final judgment declaring that the 1996 abstract was null and void and that it did not create a valid lien. The trial court's final summary judgment recited that the court had considered, in pertinent part, "the Motion" and "any response thereto," without mentioning any pre-abatement summary-judgment pleadings. The trial court's ruling granting the Holubs' and HTC's post-abatement summary-judgment motion also functioned as an implicit ruling denying the Law Firm's post-abatement summary-judgment motions, which concerned the 1996 abstract's and lien's validity, because the granting of one post-abatement motion on that issue necessarily denied the other post-abatement motions on the same issue. *See Frank's Int'l, Inc. v. Smith Int'l, Inc.,* No. 01–06–00366–CV, 2008 WL 126630, at *1 n. 2 (Tex.App.-Houston [1st Dist.] Jan. 14, 2008, no pet.) (memo.op.) (providing that one party's summary-judgment motion was implicitly denied on ground on which trial court had granted other party's summary-judgment motion when granting of one motion necessarily denied other motion on that issue).

2. For example, the Holubs' and HTC's post-abatement, traditional summary-judgment motion sought the same relief that their pre-abatement, traditional summary-judgment motion had. Additionally, the post-abatement motion's prayer requested a ruling only on that motion, not also on their pre-abatement, traditional motion on which the trial court had not yet ruled. Additionally, the post-abatement motion attached most of the pertinent evidence that had been attached to the pre-abatement motion, as well as some additional evidence, indicating that the post-abatement motion would stand alone for the trial court's consideration.

3. For example, as with the Holubs' and HTC's post-abatement summary-judgment pleadings, the Law Firm's post-abatement, traditional summary-judgment motion sought the same relief that its traditional motion for partial summary judgment had, albeit for different reasons. Additionally, the post-abatement motion's prayer requested a ruling only on that motion; it did not request a ruling on the Law firm's pre-abatement motion for partial summary judgment on which the trial court had not yet ruled. Finally, the post-abatement motion incorporated evidence, implicitly indicating that it would stand alone for the trial court's consideration.

## Standard of Review

Traditional summary judgment under Texas Rule of Civil Procedure 166a(c) is proper only when a movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *see* Tex.R. Civ. P. 166a(c). A defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action or if it conclusively establishes all elements of an affirmative defense. *Randall's Food Mkts., Inc.*, 891 S.W.2d at 644.

A party may move for a no-evidence summary judgment under Texas Rule of Civil Procedure 166a(i) "if there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *see* Tex.R. Civ. P. 166a(i). "The trial court must grant the motion unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on the challenged elements." *Flameout Design & Fabrication, Inc.*, 994 S.W.2d at 834.

In reviewing the granting of either type of summary-judgment motion, we indulge every reasonable inference from the evidence in favor of the non-movant, resolve any doubts arising from the evidence in its favor, and take as true all evidence favorable to it. *Malcomson Rd. Util. Dist. v. Newsom*, 171 S.W.3d 257, 263 (Tex.App.-Houston [1st Dist.] 2005, pet. denied); *Flameout Design*, 994 S.W.2d at 834. When an order granting summary judg-

ment does not specify the grounds upon which the trial court ruled, we must affirm if any of the summary judgment grounds is meritorious. *See Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995).

To the extent that the trial court expressly granted the Holubs' and HTC's post-abatement summary-judgment motion on the abstract's and lien's validity and implicitly denied the Law Firm's post-abatement summary-judgment motions on the same issue, we apply the standard of review applicable to cross-motions for summary judgment. *See Frank's Int'l, Inc.*, 2008 WL 126630, at *1 n. 3 (providing same, when one motion was expressly granted and one was implicitly denied). That is, we review both parties' post-abatement summary-judgment evidence and, if we reverse, we may grant the relief that the trial court should have granted on that one issue. *See Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.-Houston [1st Dist.] 2001, no pet.).

## Statute of Limitations

In its third point of error, the Law Firm argues that "the trial court erred in granting [the] Holubs' and [HTC's pre-abatement, traditional] motion for summary judgment on the ground that the statute of limitation ran on [the Law Firm's] claims . . . ."

The only motion in which the Holubs and HTC raised the statute of limitations was their pre-abatement, traditional summary-judgment motion, on which the trial court never ruled. The trial court's pre-abatement summary-judgment order granted only the Holubs' and HTC's no-evidence motion for summary judgment—in which they did not assert, and could not have asserted,[4] a statute-of-limitations af-

---

**4.** *See In re Estate of Swanson,* 130 S.W.3d 144, 148 (Tex.App.-El Paso 2003, no pet.)

(holding that defendant "cannot raise the statute of limitations defense in a no-evidence

firmative defense. The statute of limitations was simply not a basis for any summary-judgment motion on which the trial court ruled.

We overrule the Law Firm's third point of error.

### Arguments Relating to Claims Against Thomas

Under part of its first point of error, the Law Firm argues that Thomas was bound by the settlement agreement that he signed with the Law Firm because he did not revoke his consent to it before entry of the agreed judgment and because he was presumed to know the content and effect of what he had signed. These arguments are irrelevant to this appeal because Thomas, whom they concern, is not a party on appeal and because the Holubs and HTC did not move for summary judgment on these grounds.

Accordingly, we overrule these arguments under the Law Firm's first point of error.

### The Validity of the 1996 Abstract and Lien

In the remainder of its first point of error, the Law Firm argues that the trial court erred in granting the Holubs' and HTC's pre-abatement, no-evidence motion for summary judgment because the Law Firm raised a fact issue on the validity of the 1996 abstract and thus of the lien that arose from it. Accordingly, the Law Firm also argues that, because its claims for damages were based on the validity of the 1996 abstract and lien, the trial court erred in rendering summary judgment "in all respects." Likewise, in its second point of error, the Law Firm argues that the trial court erred in granting the Holubs' and HTC's pre-abatement, no-evidence motion

for summary judgment because Thomas's judicial admission that a fact issue existed on the validity of the 1996 abstract and lien bound the Holubs and HTC, thus precluding summary judgment on its claims for damages.

By supplemental brief filed after the cause was reinstated on appeal, the Law Firm argues that the trial court erred in granting the Holubs' and HTC's post-abatement, traditional summary-judgment motion concerning the 1996 abstract's and lien's validity and by implicitly denying its own post-abatement summary-judgment motions on the same issue. The Law Firm also complains that the trial court erred (1) in declaring that the 1996 abstract was void and that no lien arose from it and (2) in failing to declare that the 1996 abstract and lien were valid and that the Holubs did not purchase Thomas's home as bona fide purchasers.

### A. The Procedural Posture

■ We must first determine what summary-judgment rulings and grounds we may consider on appeal. The Law Firm mistakenly assumes in its opening brief on appeal that the Holubs' and HTC's pre-abatement, no-evidence summary-judgment motion asserted a challenge based on the 1996 abstract's and lien's validity. That motion did not assert such a ground, however. The only pre-abatement grounds asserted by the Holubs and HTC to the 1996 abstract's and lien's validity came in their *traditional* summary-judgment motion, on which the trial court never ruled. Indeed, that traditional summary-judgment motion was superseded during abatement by the Holubs' and HTC's filing of what was in effect an amended, traditional summary-judgment motion on the same issue. *See Dallas*

summary judgment motion which otherwise shifts the evidentiary burden.'').

*Indep. Sch. Dist. v. Finlan,* 27 S.W.3d 220, 231 (Tex.App.-Dallas 2000, pet. denied) (indicating, with respect to motion second summary-judgment motion that did not include word "amended" in title, that "[a] substituted or amended motion for summary judgment supercedes and supplants the previous motion. . . ."); *State v. Seventeen Thousand & No/100 Dollars U.S. Currency,* 809 S.W.2d 637, 639 (Tex.App.-Corpus Christi 1991, no writ) (holding same with respect to motion styled simply "Second Motion for Summary Judgment," without containing "amended" in title). Likewise, the trial court never ruled on the Law Firm's pre-abatement, traditional motion for partial summary judgment concerning the 1996 abstract's and lien's validity. And that pre-abatement motion for partial summary judgment was likewise superseded by the Law Firm's post-abatement, hybrid summary-judgment motions. *See Finlan,* 27 S.W.3d at 231; *Seventeen Thousand & No/100 Dollars U.S. Currency,* 809 S.W.2d at 639. Once an amended summary-judgment motion has been filed, the trial court may not consider the prior motion. *E.g., Gibson v. Park Cities Ford, Ltd.,* 174 S.W.3d 930, 932 (Tex.App.-Dallas 2005, no pet.). Under such circumstances, the grounds alleged in the movant's amended summary-judgment motion replace the grounds alleged in its superseded summary-judgment motion. *See Frias v. Atlantic Richfield Co.,* 999 S.W.2d 97, 102 (Tex.App.-Houston [14th Dist.] 1999, pet. denied).

▮ The only rulings that the trial court made relating to the 1996 abstract's and lien's validity are embodied in the trial court's order expressly granting the Holubs' and HTC's post-abatement, summary-judgment motion and its implicit denial of the Law Firm's post-abatement summary-judgment motions on the same issue. These are the rulings that we re-

view when discussing the 1996 abstract's and lien's validity. Additionally, the only summary-judgment grounds that can form the basis of those rulings are those asserted in the Holubs' and HTC's and the Law Firm's post-abatement motions for summary judgment. We cannot consider grounds raised in the parties' pre-abatement summary-judgment motions on which the trial court never ruled.

## B. The Parties' Post–Abatement Positions Here and Below

The Holubs' and HTC's implicit starting point in their post-abatement, summary-judgment motion was that, to create a valid lien, an abstract of an agreed judgment, rendered upon settlement, must reflect settlement payments that are made at any time before the abstract is recorded, even if those payments are made before the agreed judgment is signed. Based on this implicit understanding, the Holubs' and HTC's motion then asserted as follows: (1) Thomas's $500 check to Patterson was a down-payment on the already agreed-upon $22,500 settlement amount, *i.e.,* it was the first payment for which the settlement agreement (and thus the agreed judgment) called, albeit paid to the Law Firm before the court had signed the agreed judgment; (2) the 1996 abstract did not reflect a credit for the $500 down-payment that Thomas had made, but instead showed a judgment debt of $22,500; and thus (3) the 1996 abstract was invalid, making the 1996 lien invalid, as well. The Holubs and HTC also argued that any evidence that Thomas's $500 payment was not the called-for down payment—which evidence had been attached to the Law Firm's pre-abatement summary-judgment pleadings, and which the Holubs and HTC attached to their post-abatement summary-judgment motion in a preemptive move—was incompetent parol evidence

that could not raise a fact issue on the nature of Thomas's $500 payment.

In its superseded pre-abatement summary-judgment motion and response, the Law Firm had argued (1) that Thomas's $500 payment was not a down-payment, so that the 1996 abstract and resulting lien were not invalid for the reason asserted in the Holubs' and HTC's various summary-judgment motions, and, alternatively, (2) that even if the $500 was a down-payment on the settlement amount, it was not a credit that had to be reflected on the 1996 abstract in order to create a valid lien. However, in its *post-abatement* summary-judgment motion and response, the Law Firm did not reassert these two arguments, but instead raised a new one. Specifically, the Law Firm's new ground was that the applicable statute required that the 1996 abstract reflect only the amount due according to the judgment, not the amount remaining under the settlement agreement. Implicit in this position appears to have been an understanding that any payment made pursuant to settlement, but not reflected in the agreed judgment, need not be reflected in the abstract. On appeal, the Law Firm argues all three grounds, including the two pre-abatement grounds that it abandoned in its post-abatement summary-judgment motion and response.

## B. The Statutes

### § 52.001. Establishment of Lien

Except as provided by Section 52.0011, a first or subsequent abstract of judgment, *when it is recorded and indexed in accordance with this chapter,* if the judgment is not then dormant, constitutes a valid lien on real property of the defendant located in the county in which the abstract is recorded and indexed....

TEX. PROP.CODE ANN. § 52.001 (Vernon 1995) (emphasis added).

### § 52.003. Contents of Abstract

(a) An abstract of judgment must show:

. . .

(6) the amount for which the judgment was rendered *and the balance due;* ....

*Id.* § 52.003 (Vernon 1995) (emphasis added).

## C. Discussion

The parties dispute whether these statutes and the case law interpreting them require that a payment made pursuant to settlement, but before an agreed judgment based on that settlement is signed, be noted on an abstract of judgment that issues after the judgment is signed. The parties also dispute whether an abstract on an agreed judgment must reflect settlement payments, whenever they are made, when the related agreed judgment does not reflect those payments. The trial court, by granting the Holubs' and HTC's post-abatement summary-judgment motion and by implicitly denying the Law Firm's post-abatement summary-judgment motions, in effect answered these questions in favor of the Holubs and HTC. We reach this issue because it was litigated in the parties' post-abatement summary-judgment pleadings.

### 1. The Law

"Because a judgment lien is created by statute, substantial compliance with the statutory requirements is mandatory before a creditor's lien will attach." *Hoffman, McBryde & Co., P.C. v. Heyland,* 74 S.W.3d 906, 909 (Tex.App.-Dallas 2002, pet. denied); *accord McGlothlin v. Coody,* 59 S.W.2d 819, 820 (Tex. Comm'n App.1933, judgm't adopted); *Olivares v. Nix Trust,* 126 S.W.3d 242, 248 (Tex.App.-San Antonio 2003, pet. denied). "Substan-

tial compliance allows only a minor deficiency in an element of the abstract of judgment as opposed to omitting a statutorily required element altogether." *Olivares*, 126 S.W.3d at 248; *accord Citicorp Real Estate, Inc. v. Banque Arabe Internationale D'Investissement*, 747 S.W.2d 926, 929–30 (Tex.App.-Dallas 1988, writ denied). Accordingly, an abstract of judgment does not substantially comply with section 52.003, and thus creates no lien, when it completely omits an element that section 52.003 requires be included in an abstract. *See, e.g., Citicorp Real Estate, Inc.*, 747 S.W.2d at 929–30. The reason for this result is that the complete omission of a required element is a major—not a minor—deficiency. *See id.*

■■■ The purpose of Property Code sections 52.003 and 52.004 is two-fold: (1) to create a judgment lien in the first place and (2) to provide notice to subsequent purchasers of that lien's (and the judgment's) existence. *See Olivares*, 126 S.W.3d at 247; *Citicorp Real Estate, Inc.*, 747 S.W.2d at 929; *McGlothlin v. Coody*, 39 S.W.2d 133, 134 (Tex.Civ.App.-Eastland 1931), *aff'd*, 59 S.W.2d 819 (Tex. Comm'n App.1933, judgm't adopted). As for the former purpose, if an abstract does not substantially comply with the statutory requirements governing the abstract's contents, "it is ineffective to create a lien despite the actual knowledge by others of the contents of the defective abstract or related judgment." *See Citicorp Real Estate, Inc.*, 747 S.W.2d at 930; *accord Reynolds v. Kessler*, 669 S.W.2d 801, 806 (Tex. App.-El Paso 1984, no writ) (extending same principle to abstract that is "so improperly *recorded and indexed* that it cre-

ates no lien") (emphasis added). That is, "[s]ubstantial compliance with section 52.003 is *essential and mandatory* to the creation of the lien itself and is not required solely to ensure that subsequent purchasers are provided notice." *Citicorp Real Estate, Inc.*, 747 S.W.2d at 931 (emphasis in original).

■■■ The applicable statute requires that, among other things, the abstract show "the amount for which the judgment was rendered *and the balance due.*" Tex. Prop.Code Ann. § 52.003(a)(6) (emphasis added). "The balance due" means the amount of the judgment less any amount that is paid in partial satisfaction thereof before the abstract is issued.[5] An abstract of judgment that omits the amounts paid in partial satisfaction of the judgment before the abstract's issuance does not substantially comply with section 52.003(a)(6) and thus does not create a lien. *See Willis v. Sanger*, 15 Tex.Civ.App. 655, 40 S.W. 229, 234 (1897, writ ref'd); *Evans v. Frisbie*, 84 Tex. 341, 19 S.W. 510, 511 (1892); *Askey v. Power*, 36 S.W.2d 446, 447 (Tex. Comm'n App.1931, holding approved); *McIntire v. Sawicki*, 353 S.W.2d 952, 953 (Tex.Civ.App.-Eastland 1962, writ ref'd n.r.e.); *Tex. Building & Mortgage Co. v. Morris*, 123 S.W.2d 365, 368 (Tex.Civ.App.-Beaumont 1938, writ dism'd, w.o.j.); *Ainsworth v. Dorsey*, 191 S.W. 594, 595–96 (Tex.Civ.App.-Austin 1917, no writ) (dictum); *Noble v. Barner*, 22 Tex.Civ.App. 357, 55 S.W. 382, 383 (1899 writ dism'd). Courts strictly construe the requirement that the abstract of judgment show the amount for which the judgment was ren-

5. One of our sister courts of appeals has recently held that the abstract of judgment need show the balance due only as of the date of the abstract's issuance, rather than as of the date of the abstract's recording, despite dictum in earlier cases indicating that the date of recording is the pertinent date. *See Hoffman, McBryde & Co., P.C. v. Heyland*, 74 S.W.3d 906, 910 (Tex.App.-Dallas 2002, pet. denied). We note that, in this case, the $500 was paid before either the issuance or the recording of the abstract.

dered and the balance due thereon. *Morris*, 123 S.W.2d at 368.

## 2. The Granting of the Holubs' and HTC's Post–Abatement summary-Judgment Motion

 The 1996 abstract stated "N/A" for the amount of credit and also provided that the balance due on the judgment as of the date of its issuance was the full judgment amount. The 1996 abstract did not reflect the $500 payment made by Thomas two months earlier. The Law Firm argues that, even if the Holubs and HTC are correct that Thomas's $500 payment was intended as a down-payment in the $22,500 settlement amount (the Holubs' and HTC's theory), rather than an inducement to settle (the Law Firm's theory), the fact that that payment was made *before the agreed judgment was signed* requires the conclusion, as a matter of law, that that payment could not have been a credit on the $22,500 judgment.[6]

 We disagree. When judgment is rendered in situations other than upon settlement, the usual sequence of events is for judgment to be rendered before the tendering of partial payment on that judgment; in this type of situation, it is the post-judgment payment that constitutes a credit on the amount due under the judgment. When parties enter into an agreed judgment *upon settlement,* however, that sequence does not necessarily apply. That is the situation here. The Law Firm points to no authority holding that a payment in partial satisfaction of an agreed judgment executed upon settlement *cannot* count as a credit on that agreed judgment simply because the payment was tendered before the agreed judgment was signed by the court. Put another way, it is the parties' intent in tendering and accepting the payment that is paramount, not the payment's timing. Indeed, in this situation, the settlement and any agreed judgment reciting the full amount for which the settlement calls are but one transaction, so that a payment made pursuant to the settlement also acts as a credit on the agreed judgment. Moreover, section 52.003(a)(6) provides that the abstract of judgment show "the amount for which the judgment was rendered and the balance due"; it does not speak to when the payment amounting to a credit on the judgment be

6. This argument was raised in the Law Firm's pre-abatement summary-judgment response, but that response was superseded by its post-abatement summary-judgment response, which was the only response properly before the court when it ruled. However, a non-movant "needs no answer or response to the motion to contend on appeal that the grounds expressly presented to the trial court by the movant's motion are insufficient as a matter of law to support summary judgment" because "[t]he trial court may not grant a summary judgment by default for lack of an answer or response." *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979). At the heart of the Law Firm's appellate challenge is an issue of statutory construction: does the phrase "the balance due" mean what the Law Firm contends or what the Holubs and HTC contended in their summary-judgment motion? We thus interpret the Law Firm's appellate challenge to be that the Holubs' and HTC's summary-judgment ground was insufficient as a matter of law to support the judgment, which challenge may be raised for the first time on appeal. *See id.*

We also note that, in its appellate briefing, the Law Firm raised this argument only in conjunction with its challenge to the granting of the Holubs' and HTC's pre-abatement, no-evidence summary-judgment motion, which did not assert a ground based on the 1996 abstract's and lien's validity. The Law Firm's supplemental brief filed after abatement did not assert this challenge. Nonetheless, we construe the Law firm's briefs to raise this challenge with respect to the post-abatement summary-judgment ruling because we must construe briefing liberally. *See* Tex.R.App. P. 38.1(e), 38.9; *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

tendered. Accordingly, we hold that the mere fact that a debtor tenders payment pursuant to settlement before the agreed judgment is signed by the court—when the agreed judgment is required by the settlement and awards the full settlement amount—does not exempt the abstract issued on that agreed judgment from having to show the amount of that payment as a credit. *See* TEX. PROP.CODE ANN. § 52.003(a)(6).

We must next determine if the Holubs and HTC showed, as a matter of law, that Thomas's $500 payment was such a tender on the agreed judgment, instead of a monetary inducement to enter into settlement discussions in the first place.[7] With one exception mentioned below, the Holubs and HTC presented the following evidence in conjunction with their post-abatement summary-judgment motion: (1) the settlement agreement, which recited that Thomas owed the full amount of $47,372.59 and which called for Thomas to pay $22,500 total to the Law Firm, with $500 down and $300 per month after that; (2) the agreed judgment, which the parties signed at the same time as the settlement agreement and which awarded $22,500 to the Law Firm; (3) evidence that Thomas wrote the $500 check during his settlement meeting with the Law Firm, as the down-payment on the $22,500 settlement amount that formed the basis of the $22,500 agreed judgment in favor of the Law Firm; (4) evidence that Thomas's $500 check contained the notation "Balance $22,000 for att. fees for divorce, etc."; (5) evidence that Thomas wrote the notation on the check after he and the Law Firm had reached an agreement to settle the case; and (6) the 1996 abstract, which did not show a credit for the $500 that Thomas had paid. Under the Holubs' and HTC's summary-judgment theory, the Law Firm had to show the $500 on the 1996 abstract if Thomas had paid that amount as a down-payment on the settlement. The above evidence, when viewed in the light most favorable to the Law Firm, carried the Holubs' and HTC's burden of proving this theory by demonstrating that Thomas had paid the $500 as a down-payment on the $22,500 settlement amount, rather than as an inducement to enter into settlement negotiations at all.

But the above was not the only summary-judgment evidence that the Holubs and HTC produced. They also produced potentially conflicting summary-judgment evidence that showed that (1) on January 4, 1996, Thomas entered the Law Firm's office and "threw a check down" for $500, made out to Patterson; (2) Thomas paid the $500 check as an inducement for Patterson, on behalf of the Law Firm, to negotiate a settlement with him concerning

---

**7.** The Law Firm's opening brief on appeal, filed before abatement, argued that the trial court erred in rendering summary judgment because a fact issue existed on the nature of Thomas's $500 payment. However, the Law Firm's challenge was asserted only to the granting of the Holubs' and HTC's pre-abatement, no-evidence summary-judgment motion, which did not assert a ground based on the 1996 abstract's and lien's validity (and thus did not concern the nature of Thomas's $500 payment). In its supplemental brief filed after abatement, as in its post-abatement summary-judgment response, the Law Firm did not assert a challenge that the Holubs and HTC had not proved the nature of Thomas's $500 payment as a matter of law. Nonetheless, we construe the Law firm's briefs to challenge whether the Holubs and HTC proved the nature of Thomas's $500 payment as a matter of law because we must construe briefing liberally. *See* TEX.R.APP. P. 38.1(e), 38.9; *Sterner*, 767 S.W.2d at 690. Additionally, even though the Law Firm did not raise this argument in its post-abatement summary-judgment response, it is the type of complaint that may be asserted for the first time on appeal. *See Clear Creek Basin Auth.*, 589 S.W.2d at 678.

the delinquent attorney's fees; (3) the $500 was an initial payment on the $47,372.59 in fees then owing and was made to show good faith on Thomas's part in asking to open settlement negotiations; and (4) the parties did not intend the $500 to be a down-payment on a settlement amount that had not yet been agreed or even discussed.

The Holubs and HTC presented these last pieces of evidence preemptively, assuming that the Law Firm would again rely on this evidence in its post-abatement motion and response.[8] In this preemptive move, the Holubs and HTC argued that this additional evidence, which indicated that Thomas's $500 check was not the called-for down payment, but was instead an independent inducement to settle, was incompetent parol evidence because it contradicted the express terms of the settlement agreement. Because the Holubs and HTC introduced evidence that would, if not incompetent, preclude the very summary judgment that they sought, and because the Law firm contends on appeal that this evidence is competent, we must address whether this evidence was in fact incompetent. *See Perry v. Houston Indep. Sch. Dist.*, 902 S.W.2d 544, 547–48 (Tex.App.-Houston [1st Dist.] 1995, writ dism'd w.o.j.) ("A nonmovant may use a movant's own [summary-judgment] exhibit against the movant to establish the existence of a fact question."); *Keever v. Hall & Northway Advertising, Inc.*, 727 S.W.2d 704, 706 (Tex.App.-Dallas 1987, no writ) ("A movant's [summary-judgment] exhibit may support a motion for summary judgment or it may create a fact question. . . .").

 "Under the parol evidence rule, if the parties have integrated their agreement into a single written memorial, all prior negotiations and agreements with regard to the same subject matter are excluded from consideration, whether they were oral or written." *Baroid Equip., Inc. v. Odeco Drilling, Inc.*, 184 S.W.3d 1, 13 (Tex.App.-Houston [1st Dist.] 2005, pet. denied). "Additionally, a written instrument presumes that all prior agreements relating to the transaction have been merged into it and will be enforced as written and cannot be added to, varied, or contradicted by parol testimony." *Id.* Parol evidence "is not admissible for the purpose of creating an ambiguity" in a written contract. *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). If a written contract's terms are unambiguous (and no one argues here that they are not), "then parol evidence is inadmissible . . . to vary, add to or contradict its terms"— especially when, as here, the contract contains a merger clause. *Stauffer v. Henderson*, 801 S.W.2d 858, 863 (Tex. 1990); *Baroid Equip., Inc.*, 184 S.W.3d at 13. Likewise, a contract's essential elements may not be supplied by parol evidence. *See Boyert v. Tauber*, 834 S.W.2d 60, 62 (Tex.1992). These exclusionary rules concerning parol evidence apply, however, "only to contractual or jural writings evidencing the creation, modification, termination or securing of a particular right or obligation." *Gannon v. Baker*, 818 S.W.2d 754, 755–56 (Tex.1991). Additionally, "[t]he parol evidence rule does not preclude enforcement of prior or contemporaneous oral agreements that are collateral to an integrated agreement and are not inconsistent with, and do not vary or contradict, the express or implied terms or obligations thereof." *Baroid Equip., Inc.*,

---

**8.** This assumption by the Holubs and HTC was incorrect, it turns out, because the Law Firm never relied on this controverting evidence in its post-abatement, summary-judgment pleadings.

184 S.W.3d at 15 (citing *Hubacek v. Ennis State Bank*, 159 Tex. 166, 317 S.W.2d 30, 30–31 (1958)).

We conclude that the evidence showing that Thomas's $500 check was a separate payment to induce settlement, rather than the down payment called for by the settlement, was inadmissible parol evidence because it would vary or contradict the settlement agreement's terms. This evidence showed that Thomas's $500 check and its receipt were an independent offer and acceptance, made as incentive to negotiate, to pay part of the $47,372.59 that Thomas owed; according to that evidence, the negotiations and the settlement that was eventually reached followed that incentive payment. Thus, under that evidence, the $47,372.59 that Thomas owed was reduced by $500, to a total of $46,872.59, *before he even entered settlement negotiations with the Law Firm.* Yet the settlement agreement unambiguously recited, "WHEREAS Thomas *owes* Patterson *$47,372.59* for legal services rendered...." (Emphasis added.) The cited summary-judgment evidence contradicts this total-amount-due recitation in the settlement agreement, rendering that evidence incompetent. *See Baroid Equip., Inc.*, 184 S.W.3d at 13 ("Evidence violating the parol evidence rule has no legal effect and 'merely constitutes proof of facts that are immaterial and inoperative.'") (quoting *Piper, Stiles & Ladd v. Fid. & Deposit Co.*, 435 S.W.2d 934, 940 (Tex.Civ.App.-Houston [1st Dist.] 1968, writ ref'd n.r.e.)); *Johnson v. Driver*, 198 S.W.3d 359, 364 (Tex.App.-Tyler 2006, no pet.) ("'[E]vidence admitted in violation of the rule is incompetent and without probative force, and it cannot properly be given legal effect.'") (quoting *Ross v. Stinnett*, 540 S.W.2d 493, 495 (Tex.Civ.App.-Tyler 1976, no writ)).

Accordingly, we hold that the Holubs and HTC did not inadvertently raise a material fact issue by producing evidence that Thomas's $500 payment was not a down-payment so as to defeat their own post-abatement summary-judgment motion. We thus further hold that the trial court did not err to the extent that it rendered summary judgment for the Holubs and HTC based on the invalidity of the 1996 abstract and lien.

### 3. The Implicit Denial of the Law Firm's Post–Abatement Summary Judgment Motions

In a supplemental brief filed after the appeal was reinstated, the Law Firm challenges the trial court's implicit denial of its post-abatement summary-judgment motions on the 1996 abstract's and lien's validity. The sole argument that the Law Firm advanced in those post-abatement motions was as follows:

Here, the abstract states all of the requirements of section 52.003 of the property Code. The Holubs [sic] main (or only) complaint is that the amount of the *judgment* does not accurately reflect the agreement between Dave Thomas and the Patterson law firm; Patterson disagrees and takes the position that the judgment does accurately reflect the agreement. However, this factual dispute has nothing to do whatsoever with the issue of whether the abstract attached to the property purchased by the Holubs and thereby put them on constructive notice. The only question is whether there was substantial compliance with the statute. Namely, did the abstract state the amount for which the judgment was rendered and the balance due according to the judgment. The judgment in the underlying case states that "Gary E. Patterson & Associates, P.C. have judgment against Dave Thomas, individually, in the amount of twenty-

two thousand five hundred and no/100s dollars ($22,500.00)." The abstract states exactly the same. Therefore, there is nothing defective about the abstract. . . .

(Emphasis in original; citation omitted.) We interpret this as an argument that the only sum that need be reflected in an abstract of judgment is the judgment amount and any credit on that amount *that is also reflected in the judgment itself.* That is, any payment made on the judgment at any time that is not reflected in the judgment itself need not be revealed in the abstract. This position is contrary to well-settled authority, however, and we reject it. *See Willis,* 40 S.W. at 234; *Evans,* 19 S.W. at 511; *McIntire,* 353 S.W.2d at 953; *Morris,* 123 S.W.2d at 368; *Ainsworth,* 191 S.W. at 595–96; *Noble,* 55 S.W. at 383.

### D. Conclusion

We hold that the trial court did not err in granting the Holubs' and HTC's post-abatement summary-judgment motion on the validity of the 1996 abstract and lien, in implicitly denying the Law Firm's post-abatement summary-judgment motions on the validity of the 1996 abstract and lien, and in declaring that lien to be invalid.

We overrule the portion of the Law firm's first point of error addressing the 1996 abstract's and lien's validity; the challenge in the Law Firm's post-abatement supplemental brief to the granting of the Holubs' and HTC's post-abatement summary-judgment motion on the 1996 abstract's and lien's validity and to the declaration rendered thereon; and the challenge in the Law Firm's post-abatement supplemental brief to the implicit denial of its post-abatement summary-judgment motions.

### Issues Relating to the Granting of the Holubs and HTC's Pre–Abatement, No–Evidence Summary–Judgment Motion

In multiple points of error, the Law Firm challenges the granting of the Holubs' and HTC's pre-abatement, no-evidence motion for summary judgment against certain of its claims for damages. The Law Firm also fails to challenge the rendition of summary judgment against certain of its claims for damages or requests for relief. We address the second category first.

### A. Bases Asserted in the Holubs' and HTC's Pre–Abatement, No–Evidence Summary–Judgment Motion That Are Not Challenged on Appeal

One of the grounds asserted in the Holubs' and HTC's pre-abatement, no-evidence summary-judgment motion was that no civil cause of action for suborning perjury existed. On appeal, the Law Firm does not challenge this basis for the rendition of no-evidence summary judgment against its "suborning perjury" cause of action. Another ground asserted in the Holubs' and HTC's motion was that the Law Firm could produce no evidence of duty to support its negligence claim against them.[9] On appeal, the Law Firm does not challenge this basis for the rendition of summary judgment against its negligence cause of action.[10] Finally, the Ho-

---

**9.** As we have explained above, we construe as a negligence claim the Law Firm's allegation that the Holubs and HTC had failed to investigate the validity of "Thomas' assertions that he was not the Dave Thomas named in [the

Law Firm's] Abstract of Judgment" when they allegedly had a duty to do so.

**10.** Although the Law Firm occasionally mentions in its brief that the Holubs and HTC were "put on notice to make inquiry . . . to

lubs' and HTC's motion asserted that the Law Firm could produce no evidence of the malice needed to support exemplary damages. On appeal, the Law Firm does not challenge the rendition of summary judgment on its request for exemplary damages. Accordingly, we affirm the pre-abatement, no-evidence summary judgment to the extent that it was rendered against the Law Firm's claims for suborning perjury and negligence and its request for exemplary damages. *See Garcia v. Nat'l Eligibility Express, Inc.,* 4 S.W.3d 887, 889 (Tex.App.-Houston [1st Dist.] 1999, no pet.) (citing *Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993)). Our remaining discussion thus concerns only the Law Firm's remaining claims for damages.

## B. Sufficiency of the Holubs' and HTC's Pre–Abatement, No-evidence Summary–Judgment Motion

In a portion of its fourth, fifth, and sixth points of error, as well as in its reply brief, the Law Firm complains that the trial court erred in granting the pre-abatement, no-evidence summary-judgment motion of the Holubs and HTC on the Law Firm's claims for damages because the "Holubs and [HTC] . . . failed to identify [in their no-evidence summary-judgment motion] the specific element(s) they allege [the Law Firm] does not have evidence of, as required by Rule 166a(i). . . ."

After adequate time for discovery, a party may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. Tex.R. Civ. P. 166a(i); *Roventini v. Ocular Scis., Inc.,* 111 S.W.3d 719, 722 (Tex.App.-Hous-

ton [1st Dist.] 2003, no pet.). Rule 166a(i) requires that a no-evidence summary-judgment motion "be specific in challenging the evidentiary support for an element of a claim or defense; paragraph (i) does not authorize conclusory motions or general no-evidence challenges to an opponent's case." Tex.R. Civ. P. 166a, Comment—1997. Thus, all that is required under rule 166a(i) is that the no-evidence motion specifically challenge an element or elements of the non-movant's theory of liability or defense; a specific attack on the evidentiary components that might prove a certain element is unnecessary, as long as the element itself is specifically challenged. *See* Timothy Patton, Summary Judgment in Texas, Practice, Procedure and Review § 5.03[2][b] (3d ed.2006).

Contrary to the Law Firm's contention that the Holubs' and HTC's pre-abatement, no-evidence motion for summary judgment was "too conclusory, and too general, and violative of Rule 166a(i)," their motion sufficiently identified and challenged at least one element of each of the Law Firm's claims for damages.

For example, the Holubs' and HTC's motion expressly identified and challenged all four of the elements of the tortious-interference claim, separately listing each element of the cause of action, and it did the same concerning all elements of the claim for TUFTA violations. *See* Tex. Bus. & Com.Code Ann. § 24.005(a) (Vernon 2003) (TUFTA); *Swank v. Sverdlin,* 121 S.W.3d 785, 800 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (tortious interference).

As to the Law Firm's argument that the Holubs and HTC had failed to investigate the validity of "Thomas' assertions that he

determine the status of [the Law Firm's] lien," it does so in support of its issues challenging the rendition of summary judgment on its claims for intentional wrongs—*i.e.,* tor-

tious interference with contract, conspiracy, and TUFTA violations—and not with respect to its negligence claim.

was not the Dave Thomas named in [the Law Firm's] Abstract of Judgment" when they allegedly had a duty to do so—which we construe to be a claim of negligence— the Holubs' and HTC's motion expressly identified and challenged the element of duty. *See Lookshin v. Feldman,* 127 S.W.3d 100, 105 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (quoting *McKinley v. Stripling,* 763 S.W.2d 407, 409–10 (Tex.1989) (explaining, generally, elements of negligence claim, including element of duty)).

As to the Law Firm's claim that the Holubs and HTC "conspired with Thomas and suborned Thomas's perjury by instigating and causing Thomas to falsely swear an oath, under penalty of perjury," the Holubs and HTC first argued in their no-evidence motion that suborning perjury was not a viable cause of action. Alternatively, they identified and challenged all of what could possibly be considered elements of the purported claim, referring to the Penal Code definition of perjury and of party liability, and challenging every element of civil conspiracy. *See* Tex. Pen. Code Ann. §§ 7.02(a)(2), 37.02(a) (Vernon 2003); *Thomas v. Collins,* 960 S.W.2d 106, 112–13 (Tex.App.-Houston [1st Dist.] 1997, pet. denied) (setting out elements of civil conspiracy).

Finally, as to the Law Firm's request for exemplary damages, the Holubs' and HTC's motion expressly challenged the element of malice as defined in the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem.Code Ann. § 41.003 (Vernon 2003) (providing that proving malice is one way that claimant can recover exemplary damages from adverse party).

We hold that, because the Holubs' and HTC's pre-abatement, no-evidence summary-judgment motion identified and challenged at least one element, and in most cases all of the elements, of each of the Law Firm's claims for damages, that summary-judgment motion was sufficiently specific to satisfy rule 166a(i). *See* Tex.R. Civ. P. 166a(i).

We overrule this portion of the Law Firm's fourth, fifth, and sixth points of error.

**C. General Challenges to All Grounds Asserted in the No–Evidence Summary–Judgment Motion**

In its second point of error, the Law Firm argues that the trial court erred in granting the Holubs' and HTC's no-evidence motion for summary judgment on its claims for damages because Thomas's judicial admission that a fact issue existed on the 1996 abstract's and lien's validity bound the Holubs and HTC and precluded the granting of summary judgment.

■ As stated above, the Holubs' and HTC's no-evidence summary-judgment motion did not assert a ground concerning the 1996 abstract's and lien's validity. However, in response to that motion, the Law firm argued that all of its claims for damages were based on the 1996 abstract's and lien's validity, and, in support of its claims for damages, it produced summary-judgment evidence that allegedly showed the abstract's and lien's validity. One of these pieces of evidence was Thomas's response to the Law Firm's pre-abatement motion for partial summary judgment. In that response, Thomas argued not only that the 1996 abstract and lien were invalid, but also that "[a] genuine issue of material fact exists regarding whether the check was paid as the first installment on the Judgment or as an inducement to enter into settlement negotiations. This is an issue of material fact for the trier of fact to determine."

■ One party's judicial admission, by itself, generally does not bind another par-

ty absent something more, such as, for example, the other party's adoption of the first one's judicial admission. *See, e.g., Pac. Fin. Corp. v. Rucker*, 392 S.W.2d 554, 557–58 (Tex.Civ.App.-Houston 1965, no writ) ("[T]he admission made by one of the parties, to be binding on the other parties, must in some manner be adopted by such other parties."). The Law Firm points to no summary-judgment evidence of any type of relationship or action that would bind the Holubs and HTC to Thomas's admissions. Indeed, Thomas was represented by his own counsel at trial; the Holubs and HTC were represented by separate counsel; Thomas filed a separate summary-judgment response to theirs; and the Holubs and HTC did not adopt or incorporate any aspect of Thomas's summary-judgment response into their summary-judgment pleadings.

We overrule the Law Firm's second point of error.

Additionally, as it did below, the Law Firm contends that because it raised a fact issue on the validity of the 1996 abstract and lien, the trial court erred in rendering no-evidence summary judgment on its claims for damages. However, we have already decided issues relating to the 1996 abstract and lien adversely to the Law Firm. Accordingly, we overrule this argument on appeal.

## D. Tortious Interference with Contract

In the remainder of its fourth point of error, the Law Firm argues that the trial court erred in granting the Holubs' and HTC's pre-abatement, no-evidence summary-judgment motion because a genuine issue of material fact existed as to whether the Holubs and HTC had tortiously interfered with a contract (the settlement agreement and agreed judgment) between the Law Firm and Thomas.

 The elements of tortious interference with a contract are (1) the existence of a contract subject to interference; (2) willful and intentional interference with that contract; and (3) actual damage or loss proximately caused by that interference. *See Swank*, 121 S.W.3d at 800. The Holubs' and HTC's no-evidence summary-judgment motion challenged all of these elements.

 In support of its tortious-interference claim,[11] the Law Firm produced a blank "affidavit of identity" form from HTC, which was made out for Thomas to sign; which was unsigned by him; which was undated (except for the year); and which listed five liens, one of which was the number for the 1996 abstract. The Law Firm also produced the deposition of

---

11. On appeal, in support of this challenge, and of its challenges to the summary judgment rendered against its claims for conspiracy and TUFTA violations, the Law Firm relies on a letter from the Holubs' and HTC's counsel to its counsel. However, that letter was not submitted as any party's summary-judgment evidence; was instead submitted in conjunction with a separate motion for sanctions; and was not discussed in any party's summary-judgment pleadings. We cannot consider evidence that was never submitted to or considered by the trial court as part of its summary-judgment ruling. *See, e.g., Kalyanaram v. Burck*, 225 S.W.3d 291, 301 (Tex. App.-El Paso 2006, no pet.) ("Although the nonmovant is not required to 'needlessly duplicate evidence already found in the court's file,' he is required to make sure the evidence is properly before the trial court for its consideration in ruling on the motion for summary judgment.... Because the affidavit dated July 28, 2004 was neither attached to or referenced in the response to the no-evidence summary judgment, it was not before the trial court when it granted the motion and this Court will not consider it.") (quoting *Saenz v. Southern Union Gas Co.*, 999 S.W.2d 490, 493 (Tex.App.-El Paso 1999, pet. denied)) (citations omitted). Moreover, that letter was not a "stipulation" of evidence, contrary to the Law Firm's assertions.

Laurie Beasley, HTC's escrow assistant for the sale from Thomas to the Holubs, in which she indicated that she did not recall having seen, and could not identify, two affidavits of identity related to the closing. Additionally, the Law Firm produced the deposition of Thomas. In his deposition, Thomas did *not* testify—contrary to the Law Firm's implication in its brief—that HTC had showed him the unsigned affidavit of identity at or before closing, that he had refused to sign it when HTC had presented it to him, or that he had ever even seen it before. Rather, Thomas acknowledged, when asked to review the unsigned affidavit of identity, that it referred to the 1996 abstract. Thomas also denied having intended to deceive anyone by signing the affidavit of identity that he did;[12] testified that he had not told anyone at HTC about the 1996 abstract; asserted that no one at HTC had asked him to sign any document that disclaimed the 1996 abstract; and testified that he and HTC had not conspired to make false statements in the affidavit that Thomas did sign. Finally, the Law Firm produced the affidavit of identity that Thomas executed, which did not list the 1996 abstract, but which contained an affirmation that "I have no Abstract of Judgments and no Notices of Federal or State Tax Liens filed of Record against me."

First, the above is absolutely no evidence concerning *the Holubs'* intentions or actual knowledge, even though they might have had constructive knowledge of the lien by virtue of its filing of record, depending on the abstract's validity. As for the Holubs and HTC, the above is no evidence that they willfully or intentionally interfered with Thomas's settlement agreement with the Law Firm. There is no summary-judgment evidence, even viewed in the light most favorable to the Law Firm, that Thomas and HTC ever discussed the 1996 abstract at or before closing, much less that HTC intentionally defrauded anyone. Rather, what the summary-judgment evidence indicates, when viewed in the required light, is that HTC had actual knowledge of the Law Firm's lien.

▇▇▇▇▇ HTC was functioning as an escrow agent and closer for the sale. Generally speaking, "[a]n escrow agent owes a fiduciary duty *to both parties* to [an escrow] contract." *Trevino v. Brookhill Capital Resources, Inc.,* 782 S.W.2d 279, 281 (Tex.App.-Houston [1st Dist.] 1989, writ denied) (emphasis added). Likewise, "[t]he title insurance agent may not intentionally or recklessly deceive *the parties* to a real estate transaction." *Zimmerman v. First Am. Title Ins. Co.,* 790 S.W.2d 690, 695 (Tex.App.-Tyler 1990, writ denied) (emphasis added). An escrow agent and closer like HTC does not owe a duty—and thus has no negligence liability—to the non-party creditor of a party to the escrow agreement. *Cf. Rove v. First Am. Title Ins. Co.,* No. 05–96–01783–CV, 1998 WL 696880, at *4 (Tex.App.-Dallas Oct.8, 1998, no pet.) (not designated for publication) (holding that escrow agent owed duty only to parties to escrow agreement, not to party to tangential contract; further holding that trial court correctly rendered summary judgment on negligence claim against escrow agent on this ground). *Compare Zimmerman,* 790 S.W.2d at 694–95 (holding that, because real-estate agent "was a signatory of the contract and the

---

**12.** Because Thomas's self-serving, non-controvertible testimony of his intent is conclusory, and because its consideration conflicts with our standard of review, we do not con-

sider it as proof of what Thomas claimed. Rather, we mention that testimony merely to show to what he testified.

possessor of enforceable legal rights under it," title company owed agent duty).

If actual knowledge of a prior lien does not make a title company liable to the seller's creditor *in negligence,* then the creditor must show something more than the escrow agent's actual knowledge of the lien in order to show that it committed *an intentional tort* against the creditor. The existence of the unexplained, unsigned affidavit of identity is as consistent with HTC's mere actual knowledge of the Law Firm's lien, without an intent to defraud the Law Firm, as it is with HTC's intent (and conspiracy with Thomas) to defraud the Law Firm. Accordingly, it is no evidence of the intentional wrong. *See Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 601 (Tex.2004) ("To raise a genuine issue of material fact, however, the evidence must transcend mere suspicion. Evidence that is so slight as to make any inference a guess is in legal effect no evidence."); *see also City of Keller v. Wilson,* 168 S.W.3d 802, 813 (Tex.2005) ("In claims or defenses supported only by meager circumstantial evidence, the evidence does not rise above a scintilla (and thus is legally insufficient) if jurors would have to guess whether a vital fact exists. 'When the circumstances are equally consistent with either of two facts, neither fact may be inferred.'") (citation omitted).

We hold that the trial court did not err if it rendered summary judgment on the Law Firm's tortious-interference claim because the Law Firm failed to raise a fact issue on the element of willful and intentional interference.

We overrule the Law Firm's fourth point of error.

E. Civil Conspiracy

In the remainder of its fifth point of error, the Law Firm argues that the trial court erred in granting the Holubs' and

HTC's pre-abatement, no-evidence summary-judgment motion because a genuine issue of material fact existed as to whether the Holubs and HTC had conspired with Thomas to defraud the Law Firm.

■ The required elements of a civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Thomas,* 960 S.W.2d at 112–13. The Holubs' and HTC's no-evidence summary-judgment motion challenged all of these elements.

■ "Civil conspiracy is a derivative action premised on an underlying tort." *Gonzales v. Am. Title Co. of Houston,* 104 S.W.3d 588, 594 (Tex.App.-Houston [1st Dist.] 2003, pet. denied) (citing *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex.1996)). The evidence examined in the previous section, which the Law Firm produced in support of its conspiracy claim, fails to raise a fact issue on the element of a meeting of the minds on an object or course of action. *See id.* at 599 (holding that summary judgment against escrow agent to closing was properly granted when fraud was alleged basis of conspiracy and when "[n]othing in the [no-evidence] summary judgment record supports the borrowers' claim that American Title was a party to a plan to defraud them.").

For these reasons, we hold that the trial court did not err if it rendered summary judgment on the conspiracy claim because the Law Firm failed to raise a fact issue on the element of a meeting of the minds on an object or course of action.

We overrule the remainder of the Law Firm's fifth point of error.

### F. TUFTA Violation

In the remainder of its sixth point of error, the Law Firm argues that the trial court erred in granting the Holubs' and HTC's pre-abatement, no-evidence summary-judgment motion because a genuine issue of material fact existed concerning whether the Holubs and HTC had conspired with Thomas to violate TUFTA.

To be liable under section 24.005(a) of TUFTA, the debtor must have made the transfer or have incurred the obligation

> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
>
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>
>> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>>
>> (B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

*See* TEX. BUS. & COM.CODE ANN. § 24.005(a) (Vernon 2003). The Holubs' and HTC's no-evidence summary-judgment motion expressly identified and challenged all of these elements.

Because TUFTA speaks to the debtor's—here, Thomas's—actions, the Holubs and HTC could have been liable for those actions only if they had conspired with Thomas; indeed, the Law Firm pleaded this claim as one of conspiracy to violate TUFTA. We have already held that the trial court properly rendered no-evidence summary judgment on the Law Firm's conspiracy claim. Accordingly, we hold that the trial court did not err if it rendered summary judgment on the TUFTA claim because the Law Firm failed to raise a fact issue on conspiracy.

We overrule the remainder of the Law Firm's sixth point of error.

### Conclusion

We affirm the judgment of the trial court.